LINELL'S ADMINISTRATOR *vs.* LINELL and others.

1 A direction by a testator, that the proceeds of certain lands be applied to erect a house, if his family desired it, with no other directions as to those lands, leaves them undisposed of ; as to them, testator is intestate.

2. A declaration after devising lands to his son H., that "I do not, therefore, give him any further portion," does not bar H. from inheriting part of the lands as to which testator died intestate.

---

This cause was argued upon bill and answers. The bill was filed for a construction of the will of the testator, annexed to the letters of administration issued to the complainant. The funds in his hands are the proceeds of the sale of lands in Newark, of which the defendant, James S. Linell, claims one-fourth; the three other defendants contend that he is not entitled to any interest therein. The controversy is between these defendants.

*Mr. T. Runyon,* for James S. Linell.

*Mr. A. S. Hubbell,* for the other defendants.

THE CHANCELLOR.

The testator, by the ninth clause of his will, directs that the proceeds of his real estate in New Jersey, and any property he had not before disposed of, should be used to pay his debts and to erect a house, which he had authorized to be built for a homestead, on a lot which he had purchased in Michigan, if his wife and family should desire it; and that any balance remaining should be placed at interest for the use of his wife and family.

He directed that a tract of land which he owned in Michigan, adjoining the homestead·lot, should be kept for five years, for the use of his wife and children; and after that, should go to his four oldest children, subject to an annuity to his wife during widowhood. He gave a house and lot in Canandaigua to his son Henry, when of age, and until then he gave the rents for the use of the family. He gave to each of his daughters $1000 as she became of age, and until then, gave them a home with his family and support out of his estate. He gave to his son James his note for $600, in addition to $1900 which he had before given him, and stated, "I do not, therefore, give him any further portion until the farm aforesaid is divided as above directed."

Besides the four defendants, the testator left, at his death, two infant children of tender years, who died under ten years of age. His family consisted of his widow, these two infant children, and the four defendants. Since his death, his widow and two daughters have married, and the family have broken up and separated. His widow released to the defendants all her interest in the estate.

The proceeds of the lands in Newark were not needed to pay debts, or to erect the homestead. The homestead was sold after the marriage of the widow and the breaking up of the family.

In this situation, the lands in Newark and their proceeds, are not disposed of by the will of the testator. The only dispositions which he attempted have failed, and as there is no residuary clause in the will, except that contained in the

clause in which these lands were attempted to be disposed of, he must be held, as to these lands, to have died intestate.

But the other defendants claim that the provisions of the fifth clause, in stating "that I do not, therefore, give him any further portion until the farm is divided," shuts out James from receiving any more of the testator's estate, except his part of the farm.

I do not think that this provision can have that effect. The testator most probably supposed that he had disposed of all his property. And in that disposition he intended to give James, in addition to the $1900 before given to him, his note of $600 and one-fourth of the farm; he did not intend to *give* him any more. He gave to each of his other children specific legacies, and did not give them any more; he evidently did not intend to give them any more; but he did not say this in words, as in James' case, but he said so by his act. He made no provision as to a surplus which he did not suppose would exist; he did not provide that James should have no more of his estate; only that he, by the positive provisions of his will, would not *give* him any more.

If he supposed there would be a surplus, the case seems to me still stronger. If he deliberately intended to die intestate as to part, he would have provided that his son James should be excluded, if he so intended. He could have not understood the words, "I do not, therefore, give him any further portion," of what he was then dividing, to have the effect of excluding him from any surplus. I am of opinion, therefore, that the testator died intestate as to these proceeds, and that James is not excluded from his share.

And this share will not, as contended, be affected by the advancement of $1900 made to James in the testator's life. These lands, at his death, were real estate, and, so far as not disposed of, descended as such, and no advancement of lands was made to James. If they were not real estate, yet the statute directs advancements to be allowed only in distribution of the surplusage of the goods of any *person* dying intestate. This must be held only to apply to persons dying

wholly intestate; the words and equity of the statute both require such construction. It would be gross injustice, and a perversion of the object of the statute, to apply it to a surplus not disposed of, in a case like this, where the testator, in the dispositions which he has made, has taken such advancement into consideration, and in that way fixed the share of each child.

James is entitled to one equal fourth of the surplus in the complainant's hands, and each of the other children to one-fourth of it.