Burnet *v.* Burnet.

The Executors of Eliza A. Burnet, deceased,

*v.*

Samuel N. Burnet.

1. In construing a will, all doubts must be resolved in favor of the testator's having said exactly what he means.

2. A gift to the children of A. and B. (they being persons who could not have offspring jointly) must be construed according to the plain grammatical sense of the words used, and constitutes a gift to B. himself and to the children of A.

3. In construing a will, extrinsic evidence of the circumstances, situation and surroundings of the testator, and of his property, is admissible for the purpose of enabling the court to understand the meaning and application of the words he has used, but not for the purpose of showing an intention inconsistent with the words of the will.

4. Extrinsic evidence is also admissible in cases of latent ambiguity, where there are two or more persons or things exactly answering the person or thing described in the will. In such a case parol evidence may be received of what the testator said, to show which of them he meant, but not to show that he meant a person or thing different from the one mentioned in the will.

5. Under a bequest or devise to a certain person, and to the children of a certain other person, the donees take *per capita* and not *per stirpes.*

6. Unless a contrary intention is manifested, all lapsed, void and illegal legacies fall into the residuum and pass as part of it, but this rule does not apply to the residue. If a gift of the residue, or any part of it fails, whether by lapse, illegality or revocation, to the extent that it fails the will is inoperative, and the subject of the gift passes to the next of kin.

On final hearing, on bill, answers and proofs.

Note.—Besides the authorities referred to by the vice-chancellor, and those in *Hawk. on Wills* 113, *notes*; *Wms. on Ex'rs.* 1514, *notes*; 1 *Roper on Leg.* 159, the following, mostly recent cases, exemplify the rule that such donees take *per capita*:

*Thornton* v. *Roberts,* 3 *Stew.* 473 ; *Brittain* v. *Carson,* 46 *Md.* 186 ; *Payne* v. *Rosser,* 53 *Ga.* 662; *Luke* v. *Marshall,* 5 *Dana* 354 ; *Miller* v. *Miller,* 1 *Duv.* 8 ; *Clark* v. *Lynch,* 46 *Barb.* 68 ; *Seabury* v. *Brewer,* 53 *Barb.* 662 ; *Myres* v. *Myres,* 23 *How. Pr.* 410, 53 *Barb.* 664 ; *Imler's Appeal,* 2 *Grant's*

*Mr. Alfred Mills*, for complainant.

*Mr. H. C. Pitney*, for the children of Joseph H. Burnet.

*Mr. Augustus W. Bell*, for the children of Benjamin F. Howell.

*Mr. George T. Werts*, for the next of kin.

THE VICE-CHANCELLOR.

The bill in this case seeks a construction of the residuary clause of the will of Eliza Ann Burnet, deceased. That clause reads as follows:

" If anything should remain after paying legacies and expenses of settling my estate, I authorize my executor to divide it between the children of Joseph H. Burnet and Benjamin F. Howell."

Benjamin F. Howell attested the execution of the will as one of the subscribing witnesses, consequently, if he is one of the legatees designated, the gift to him is void by statute (*Rev.* p. 1244). He has two children, both born prior to the making of the will, who claim that they are the legatees designated, and that the testatrix intended that this clause of her will should be read as follows:

" I authorize my executor to divide the residue between the children of Joseph H. Burnet and of Benjamin F. Howell."

*Cas.* 322; *Hill* v. *Bowers*, 120 *Mass.* 135; *Stowe* v. *Ward*, 3 *Hawks* 604, 2 *Dev. Eq.* 509; *Whitehurst* v. *Pritchard*, 1 *Murph.* 383; *Bryant* v. *Scott*, 1 *Dev. & Bat. Eq.* 155; *Harrell* v. *Davenport*, 5 *Jones Eq.* 4; *Britton* v. *Miller*, 63 *N. C.* 268; *Rogers* v. *Rogers*, 2 *Head* 660; *Conner* v. *Johnson*, 2 *Hill Ch.* 41; *Perdriau* v. *Wells*, 5 *Rich. Eq.* 20; *Sharp* v. *Sharp*, 35 *Ala.* 574, 579; *Crawford* v. *Redus*, 54 *Miss.* 700; *Williams* v. *Yates*, 1 *C. P. Coop.* 177; *Payne* v. *Webb*, *L. R.* (19 *Eq.*) 26; *Stevenson* v. *Lesley*, 9 *Hun* 637, 70 *N. Y.* 512.

See, however, *Hamlett* v. *Hamlett*, 12 *Leigh* 350; *Hoxton* v. *Griffith*, 18 *Gratt.* 574; *Sheay* v. *Winston*, 7 *Humph.* 472; *Jourdan* v. *Green*, 1 *Dev. Eq*, 270; *Spivey* v. *Spivey*, 2 *Ired. Eq.* 100; *Haskell* v. *Sargent*, 113 *Mass.* 341; *Barnaby* v. *Tassell*, *L. R.* (11 *Eq. Cas.*) 363; *Billinslea* v. *Abercrombie*, 2 *Stew. & Port.* 24; *Paul* v. *Ball*, 31 *Tex.* 10; *Nettleton* v. *Stephenson*, 13 *Jur.*

Burnet *v.* Burnet.

If we read the will according to its plain grammatical sense, there can be no doubt as to its meaning. Benjamin F. Howell is the legatee; he cannot be removed and his children substituted without an interpolation which will work a revocation of the will as it now stands, and make a new will as to one of the legatees. All doubts must be resolved in favor of the testator's having said exactly what he meant, and plain, clear words, read in their ordinary sense, must always control in searching for the intention of a testator, unless repugnant to other words used in another part of the will. *Courter* v. *Stagg*, 12 *C. E. Gr.* 305; *Graydon's ex'rs* v. *Graydon*, 10 *C. E. Gr.* 561; *Hand* v. *Marcy*, 1 *Stew.* 59; 1 *Redf. on Wills* 421 § 35. In the absence of something in the context in the circumstances of the case to exclude the natural import of the words of a will, the court is bound to give them effect according to their plain grammatical sense.

In *Lugar* v. *Harman*, 1 *Cox* 249, the testator gave the residue of his personal estate to one Harman for life, and after Harman's death directed that it be equally divided amongst " all and every child and children of my late cousin Edward Lugar, and my cousin Philip Fearis, and their representatives." Sir Lloyd Kenyon, M. R., in disposing of a claim set up by the children of Fearis, said : " To make the bequest read so as to make it a gift to the children of Fearis you must add the word " of," whereas, the words, as they

---

618 ; *Talcott* v. *Talcott*, 39 *Conn.* 186 ; *Allison* v. *Chaney*, 63 *Mo.* 279 ; *Rand* v. *Sanger*, 115 *Mass.* 124 ; *Roome* v. *Counter*, 1 *Hal.* 111.

How far a direction " to divide " the estate, governs the construction, see *Ackerman* v. *Burrows*, 3 *Ves. & Beam.* 54 ; *Abrey* v. *Newman*, 16 *Beav.* 431 ; *Amson* v. *Harris*, 19 *Beav.* 210 ; *Pruden* v. *Paxton*, 79 *N. C.* 446 ; or, the use of the preposition " between," there being more than two beneficiaries, *Ward* v. *Tomkins*, 3 *Stew.* 3 ; *Herneisen* v. *Blake*, 1 *Phila.* 131 ; see *Rickabe* v. *Garwood*, 8 *Beav.* 579 ; *Att'y-Gen.* v. *Fletcher*, *L. R.* (13 *Eq.*) 128 ; or, a repetition of such connecting words as " to," "'of," or " and," *Blackler* v. *Webb*, 2 *P. Wms.* 383 ; *Dowding* v. *Smith*, 3 *Beav.* 541 ; *Bricker* v. *Whalley*, 1 *Vern.* 233 ; *Warrington* v. *Warrington*, 2 *Hare* 54 ; *Peacock* v. *Stockford*, 3 *DeG. M. & G.* 73 ; *McMaster* v. *McMaster*, 10 *Gratt.* 275 ; *Brown* v. *Ramsey*, 7 *Gill* 347 ; '*Farmer* v. *Kimball*, 46 *N. H.* 435 ; *Fissel's Appeal*, 27 *Pa. St.* 57 ; *Risk's Appeal*, 52 *Pa. St.* 273.—Rep.

stand, have a plain, grammatical sense, viz., to the children
of Edward Lugar, and to Philip Fearis himself." The cor-
rectness of this construction was questioned in *Mason* v.
*Baker*, 2 *K. & J.* 567, and in the matter of *Davies's will*, 7
*Jur.* (*N. S.*) 118, Sir John Romilly, M. R., said it was con-
trary to the ordinary and common sense meaning of the
terms, but it was adopted in *Peacock* v. *Stackford*, 3 *DeG. M.
& G.* 73, and Sir John Romilly afterwards approved and fol-
lowed it in *Stummvoll* v. *Hales*, 10 *Jur.* (*N. S.*) 716, 34 *Beav.*
124. In *Pitney* v. *Brown*, 44 *Ill.* 363, it would seem that
both court and counsel regarded the rule of construction
laid down in *Lugar* v. *Harman* as so unquestionably sound as
to require neither discussion nor consideration. In my judg-
ment, according to the plain meaning of the words of the gift,
Benjamin F. Howell is the legatee, and not his children.

An attempt has been made, in this case, to show, by the
introduction of parol evidence, upon whom the testatrix
intended to cast the residue of her estate. There is no pos-
sible ground upon which an offer of such evidence can be
entertained for one moment. Judge Depue has recently
stated, with his usual clearness and accuracy, how far the
courts may resort to extrinsic evidence in construing a will.
He says: " Extrinsic evidence of the circumstances, situa-
tion and surroundings of the testator, and of his property,
may be given, to enable the court to understand the mean-
ing and application of the language he has used, but no
proof, however conclusive in its nature, can be admitted
with a view of setting up an intention inconsistent with the
writing itself. The only exception to this rule is, that the
declarations of the testator may be resorted to in cases of
latent ambiguity, which arise where there are two or more
persons or things, each answering exactly to the person or
thing described in the will. In such an event parol evidence
of what the testator said, may be adduced, to show which of
them he intended, but such evidence will not be allowed to
show that he meant a thing (or a person) different from that
disclosed in the will." *Griscom* v. *Evens*, 11 *Vr.* 402, 407.

At the date of the will, and also at the death of the testator, Joseph H. Burnet had four children. There were, therefore, five residuary legatees. Do they take *per capita* or *per stirpes ?* The established rule is, that where a bequest or devise is made to a certain person, and to the children of a certain other person, the donees take *per capita* and not *per stirpes*, or as a class, each taking an equal share. *Smith* v. *Curtis*, 5 *Dutch.* 345; *Fisher* v. *Skillman*, 3 *C. E. Gr.* 229; *Pitney* v. *Brown, supra*; *Blackler* v. *Webb*, 2 *P. Wms.* 383; 2 *Jarman* 111, *marg.*; *Hawk. on Wills* 113. This construction will yield where it appears, even faintly, from any other part of the will, that the testator intended a different method of division should be adopted. This will affords no glimpse of such an intention, and the division must therefore be by equal shares.

The remaining question is, Who takes that portion of the residue intended to be given to Benjamin F. Howell, the gift of which is made void by the statute—does it go to the remaining residuary legatees, or to the next of kin as estate as to which the testatrix died intestate ? It is an established canon of construction, that unless a contrary intention is manifested, all lapsed, void and illegal legacies fall into the residuum, and pass as part of it. *Tindall's ex'rs* v. *Tindall*, 9 *C. E. Gr.* 512. But this rule does not apply to a gift of the residue when a gift of the residue, or any part of it, fails, whether by lapse, illegality, or revocation; to the extent of the failure, the will is inoperative. *Garthwaite's ex'rs* v. *Lewis*, 10 *C. E. Gr.* 351; *Hand* v. *Marcy*, 1 *Stew.* 59; *Hawk. on Wills* 42; 1 *Jarman* 293, *marg., note* 1; 2 *Redf. on Wills* 445, 8 *marg., note* 36; *Bagwell* v. *Dry*, 1 *P. Wms.* 700; *Page* v. *Page*, 2 *P. Wms.* 489; *Humble* v. *Shore*, 7 *Hare* 247.

Sir William Grant, in *Leake* v. *Robinson*, 2 *Mer.* 362, 392, said: " I have always understood that, with regard to personal estate, everything which is ill given by the will falls into the residue; and it must be a very peculiar case indeed in which there can be at once a residuary clause and a partial intestacy, unless some part of the residue itself be ill

given." And Sir Thomas Plumer, M. R., in *Skrymsher* v. *Northcote*, 1 *Swans.* 566, 570, said: "It seems clear, on the authorities, that a part of the residue, of which the disposition fails, will not accrue in augmentation of the remaining parts as a residue of residue; but, instead of resuming the nature of residue, devolves as indisposed of. Residue means all of which no effectual disposition is made by the will other than by the residuary clause; but when the disposition of the residue itself fails, to the extent to which it fails the will is inoperative." And the same rule was applied in a case where a testator, by a codicil, revoked the gift of one share of the residue given by his will, and made no other disposition of it. As to that share, it was held he died intestate. *Cresswell* v. *Cheslyn*, 2 *Eden* 123. The decree in this case was affirmed by the house of lords. 3 *Bro P. C.* 243. The principle established in this case has quite recently been recognized and enforced by both the master of the rolls and the lord chancellor of England. *Sykes* v. *Sykes*, *L. R.* (4 *Eq. Cas.*) 200, (3 *Ch. Ap.*) 301.

*Humphrey* v. *Tayleur*, *Amb.* 136, is cited as declaring a different doctrine, but I think there is a very obvious distinction between it and the other cases. The gift in that case was held to be made to two persons jointly, and it was also held, that although it was usually necessary, where a gift was made to two jointly, that one should die to enable the other to take the whole, yet that this rule was not universal in its application, for it had been adjudged that where an estate was limited to two jointly, one of whom was incompetent to take, the other should have the whole. Lord Hardwicke's judgment went mainly on the ground that the gift was joint, and that it was also clear, from plain words, that the testator intended that his next of kin should, in no event, take any more of his estate than he had expressly given to them. If, however, that case could be regarded as a decision on the very point in question, the weight of judicial opinion standing in opposition to it is so

strong that it cannot, at this day, be esteemed a safe authority.

A decree will be advised directing payment of four-fifths of the residue to the children of Joseph H. Burnet, and the remaining one-fifth to the next of kin of the testatrix.