Denton v. Clark.

HENRY M. DENTON et al., appellants,

v.

LYDIA A. CLARK, respondent.

1. Legacies which, with respect to amounts, are left in blank cannot be used to aid in construing the will.

2. When a power to sell lands is vested in two executors or the survivor of them, the clause describing them as executors and not by their names, if one of them be removed from the office, the power becomes lodged in the remaining executor.

3. The case of *Weimar* v. *Fath, 14 Vr. 1,* approved.

On appeal from a decree of the chancellor, whose opinion is reported in *Clark* v. *Denton, 9 Stew. Eq. 419.*

Bill for the specific performance of a contract for the purchase of lands.    The defendant set up that the title of complainant was defective.    The complainant in the court below, who was the respondent in the appeal, acquired title as follows : Hosea F. Clark, husband of the complainant, died seized of the premises in question, and his will contained the following clauses, viz. :

"*Item.* All the rest and residue of my houses and lands and real estate remaining and not hereinbefore particularly devised, whatsoever and wheresoever situate and being, I hereby *authorize, empower and direct* my said executrix and executors, the survivors and survivor of them, *within one year after*

Denton *v.* Clark.

*my decease, or within such further time as they may deem advantageous and to the best interest of my estate,* to bargain and sell, either at public or private sale, as they may deem best, to any person or persons, and for such price and prices and on such terms as they may think proper, hereby authorizing them to receive in part payment at such sale or sales part consideration mortgages on such liberal terms as they may deem prudent and advantageous to my estate; and for all the said houses and lands and real estate so to be sold, when sold as aforesaid, I hereby empower my said executrix and executors, the survivors and survivor of them, to make, execute and give to the purchasers thereof respectively, good and sufficient deeds in the law for the transfer thereof.

"*Item.* The rents arising from any houses and lands and real estate which I have directed to be sold, from the time of my decease to the time of such sale and conveyance, after paying thereout all taxes, assessments, repairs and interest on mortgage encumbrances, if any, as the same may be chargeable from time to time, I instruct and direct my *executrix and executors, the survivors and survivor of them, to pay over in quarterly installments, and in the following proportion, as bequests which I give to the following persons, to wit:*

"To my beloved wife, Lydia Ann Clark, an equal one-sixth part thereof; to my daughter, Mary Fannie Brown (wife of Archibald K. Brown), an equal one-sixth part thereof; *to my son-in-law, the said Archibald K. Brown, an equal one-sixth part thereof; to my daughter, Anna Elizabeth Pearsall (wife of William Pearsall), an equal one-sixth part thereof; to my son-in-law, the said William Pearsall, an equal one-sixth part thereof;* and the remaining one-sixth part thereof I reserve to be applied to the education of my grandchildren, and direct my trustees hereinafter named to pay, from time to time from the fund created from this said remaining one-sixth, in such sums as may be required, on account of the suitable education of my said grandchildren, and for their education, or the education of any or either of such grandchild or children whom my said wife and my said daughters may agree and determine to educate."

The respondent was executrix of this will and William A. Lewis executor. The respondent, on her own petition, was discharged from the "duties of her office of executrix," and subsequently the land in question, being a part of the residue of the testator's estate, was sold by the remaining executor, and the respondent became the purchaser at that sale. The title thus acquired was the one which by his bill he insisted the appellant should take in compliance with his contract.

In the will of Mr. Clark there were a number of legacies given to various persons, with the amounts left in blank.

*Mr. A. Q. Garretson,* for appellant.

*Messrs. Collins & Corbin,* for respondent.

The opinion of the court was delivered by

BEASLEY, C. J.

The first justification attempted by the appellant of his refusal to complete his contract to purchase the lands in controversy, is that the testamentary power, given to the executors by the will in question, had failed when the sale was made, because the purpose for which it had been given did not arise. It is an unquestionable rule of law, that in cases in which an authority of this kind is created with an intent to effect a certain end, and the condition of affairs becomes so changed that such end cannot be attained, or is reached without a resort to such power, that the right to exercise such power, *ipso facto*, ceases. This was the substantial ground of decision in *Moores* v. *Moores, 12 Vr. 440,* and in *Brearley* v. *Brearley, 1 Stock. 21.* The reason of the rule is that the testator meant to have the land converted into money for a certain purpose only, and such purpose failing, he did not intend it to be converted. In the application of this rule to the present case the appellant contends that the power to sell these lands was given to the executors, to subserve the purpose of raising funds to pay the amounts which the testator intended to insert in the legacies which were left in blank in that respect. But this position is both illogical and without any legal basis to be rested on. It is illogical because it attributes to the testator the creation of a power to convert his lands into money, in furtherance of a purpose which had been abandoned by him at the time he executed his will; and it is destitute of all legal foundation, because clauses in a will which are so incomplete as to be inoperative, are not admissible as exponents of a testamentary purpose. The question always is, what the testator meant when he put his will in force by the act of executing it; and when, knowingly, at that period, he permits clauses to be so incomplete as to be nugatory, such clauses are no part of the testamentary plan, and consequently can reflect no light upon such plan. To allege, therefore, that the power of sale in this will had no other intent than to effect a purpose that had been entirely surrendered, is, in

Denton *v.* Clark.

effect, to allege that it was left in this instrument by the mistake of the testator. Such a contention is not tenable.

Discarding, then, the inchoate elements just mentioned, and turning to the will in its operative parts, the intention of the testator, in the respect in question, is not involved in the least degree of uncertainty. It is plain that the testator's intent was, by the conversion of his lands into money, to make a convenient and equal distribution of it among the beneficiaries named by him in his will. Such a purpose is legibly written in the clause creating the authority in the executors to convert the lands, which is a general empowerment and direction to them to sell within a year after his decease, or within such further time as they may deem advantageous; as well as in the auxiliary clause, which distributes the net rents of such lands, from the time of his " decease to the time of such sale," among his wife, two daughters, his two sons-in-law, and the remaining sixth to be applied to the education of his grandchildren. Now it is obvious that if this direction ever could go into effect, it would continue during the lives of these several devisees, unless a sale should have been made by the executors. That the testator did not design these rents to be distributed for any great length of time is perfectly manifest from the circumstance of his direction to put an end to that state of things by a sale within the period of a year from his demise, unless such sale should appear injudicious. It is impossible to carry into effect the evident scheme of this will without putting the duty upon the executors to dispose of this land and convert it into money as soon as was reasonably practicable. I conclude, therefore, that the power to make the sale was conferred upon the executors by this testament; the remaining question is, whether it was well executed.

The objection to the sale, raised from the mode in which it has been executed, is that the testamentary power is conferred on the two executors and the survivor of them, and not on a single executor, who is not a survivor. The executrix was formally removed from her office, but this, it is said, does not make the remaining executor, in the legal sense, the survivor of the two. Without stopping to consider or discuss this latter assumption, it

is sufficient to say that the subject has recently received a careful treatment by the supreme court of this state, in the case of *Weimar* v. *Fath*, reported in *14 Vr. 1*. The doctrine there maintained is that when a will gives executors in their official capacity, a power to sell, without naming the individuals who are to be clothed with such capacity, and to which class the present case belongs, and one of such executors is removed from the office, the power to sell survives, and can be legally executed by the remaining executor. The principle thus promulged is deduced as well from the common law as from the statutory law of this state, and it would be useless to repeat on this occasion the reasoning, or recite the authorities which conduced to the result just stated. There was no fault in the mode in which the testamentary power was exercised in the present instance, and the decree appealed from should, consequently, be affirmed.

*Decree unanimously affirmed.*