DOROTHEA NAGLE

*v.*

HARRY CONARD et al.

---

DOROTHEA NAGLE

*v.*

JEPPE SONDERGAARD et al.

[Submitted January 16th, 1911.   Decided February 7th, 1911.]

1. Upon a bill for the construction of a will, and directions to trustees —*Held*, that the testator disposed of the income from his property only, and that as to the *corpus* thereof he died intestate.

2. But certain provisions of the will prevent the heirs-at-law from taking immediate possession of the properties, inasmuch as between the present time and the period of the distribution there stands a valid, active trust by virtue of which the executors and trustees have the right, and are in duty bound, to administer the income therefrom until the youngest of the testator's children shall arrive at the age of twenty-one years.

3. This trust cannot be disturbed, nor can the executors and trustees be deprived of the property until the termination thereof according to the terms of the will, and consequently there can be no partition.

4. In the foreclosure suit it being necessary that the same will shall be construed in order to determine the rights of the parties because of the contention that inasmuch as the testator at one time held the mortgage in question, and also had title to the fee in remainder, his equitable right merged in the legal right and extinguished the mortgage.—*Held*, that the well-settled rule is that merger is not favored in equity, and is never allowed, unless for special reasons and to promote the intentions of the party; and that where the equities are subserved by keeping the mortgage alive and no injury or injustice is thereby wrought, it is not extinguished.

5. To this rule should be added this qualification, namely, if there is an intervening estate, encumbrance or equity, that of itself would be sufficient to prevent a merger of the mortgage with the equity of redemption, provided the encumbrance be not one which the owner has assumed to pay, or one against which he is estopped from defending.

6. The testator in the clause of his will bequeathing the mortgage in question, speaking of this particular mortgage says, "as it is not my intention that there shall be any merger of said mortgage by reason of my holding an estate in remainder in said properties"—*Held*, that the mortgage in question is a subsisting and valid lien upon the premises in question in the hands of the testator's widow, the original legatee thereof.

7. In making the bequest of the mortgage to his wife, the testator had a right to impose on her and upon the gift, such conditions as he chose, provided the same were not in themselves illegal.

8. By his will the testator directed his executors, of whom his widow (the original legatee of the mortgage) is one, to pay and satisfy the mortgage out of the income of the property. Upon the question whether the widow or her assignee will be permitted to foreclose the mortgage in face of her obligation as executor and legatee to see to it that its principal and interest, shall be satisfied to her out of the net income of the premises—*Held*, (1) that the instrument of transfer to the complainant operates as a mere assignment of the mortgage, subject to all equities so far as the complainant is concerned, and that the testator's granddaughter (a legatee under another clause of the will) can make no claim under such assignment; and (2) that although the complainant will not be permitted to foreclose the mortgage against the remainder or the equity of redemption, there is no reason why the foreclosure of it should not be permitted against the life estate of the defendant whose duty it was to pay the mortgage, the bond being his, and he having joined in the mortgage.

9. Another reason why the foreclosure of this mortgage, as against the remainder, ought to be held up, is the settled doctrine of courts of equity, that no man shall be allowed to disappoint a will under which he takes a benefit, or to accept the benefits which a will confers unless he also performs the duties which it imposes.

10. Upon the question whether the testator's daughter and granddaughter (being two of his heirs-at-law and next of kin) can share in the residuary fund of which the testator died intestate, it being claimed that neither of them can so participate for the reason that they are excluded therefrom by particular and specific words of the will itself—. *Held,* after examination of such words, that for the purposes of the foreclosure suit, both these persons are entitled to participate in the intestate property, as tenants in common, with the other interested parties.

11. No directions can now be given in the suit for the construction of the will, as to the eventual distribution of the residuary property so undisposed of, in view of the settled rule that this court will not give directions concerning the distribution of a fund until the time for distribution arrives.

On final hearing on bills, answers, replications and proofs.

The above cases were heard together and are to be decided upon the same proofs.

The first bill is filed for the construction of a will and directions to trustees; the second is a foreclosure suit in which it is necessary that the same will shall be construed in order to determine the rights of the parties.

Peter Nelson died in November, 1908, leaving a will dated April 16th, 1908, which was admitted to probate in Middlesex county. After a devise to his widow of some real estate in Florida and considerable personal property, he made the following provisions concerning his estate in Perth Amboy:

"*Third.* I devise to my executors hereinafter named, or to such as may qualify, and to his or their successors in the trust, the properties at present numbered three hundred and five, three hundred and seven, three hundred and nine, three hundred and eleven, and three hundred and thirteen, on State street in the city of Perth Amboy, New Jersey, together with all the fixtures therein, in trust however for the following uses and purposes: To collect the income therefrom and to pay all taxes, water rates, insurance and other charges, against the same, including reasonable and just charges for their services, and to keep said property in good repair, and to keep the same rented to good tenants. and out of the income therefrom to pay to my wife Caroline Nelson, the sum of two hundred dollars each and every month during the term of her

natural life. They are directed to devote the remainder of the net income from said properties to the payment of the interest and principal of the mortgage standing against the same. Any surplus after the application of the income as above directed shall belong to my wife Caroline Nelson and my children by my said wife Caroline Nelson, and shall be invested by my executors for their use and benefit, and when such children shall all come of age the fund last mentioned, if any, derived from said properties shall be turned over to them in equal parts share and share alike. No property shall be deeded to anyone as long as my wife or one of my children is living.

"*Fourth.* I devise to my said executors or to the one who shall qualify and to their or his successors in the trust, the properties at present numbered three hundred and thirty-five, three hundred and thirty-seven, three hundred and thirty-nine, three hundred and forty-one, and three hundred and forty-three, on State street in the city of Perth Amboy, New Jersey, together with all fixtures therein, in trust·however for the following uses and purposes: To collect the incomes therefrom, and pay all taxes, water rates, insurance and other charges against the same, including reasonable and just compensation for their services, and to keep said properties in good repair, and to keep the same rented to good tenants. All rents from this property shall be put out at interest in good securities or in bank, my said wife Caroline Nelson to receive the interest of the same, semi-annually. When all the children are of age, then this sum, if any, shall be equally divided between my said wife and the children, share and share alike. No deed to be made as long as my wife or one of the children lives.

"*Fifth.* I direct that my wife Caroline Nelson, or her administrators or executors, out of the income received from the properties described in paragraph 'Four' shall pay to my grand-daughter Elanor Lynch, upon her becoming of age, or upon her marriage before her attaining her majority, the sum of two thousand dollars, or if said Elanor Lynch shall die before she becomes of age or marries, the said sum shall be paid to my children in equal proportions, or to the heirs of their bodies, such heirs taking the portion of their ancestor. If my said wife should die before receiving the full sum of two thousand dollars from the properties described in paragraph 'Four,' then this bequest to Elanor Lynch shall be payable out of any other property received by my wife from me, but the sum of two thousand dollars hereby bequeathed to said Elanor Lynch shall be in lieu of all interest to which she may be entitled in my estate by virtue of this will or otherwise, and when any property is herein devised or bequeathed to my children or heirs, or their heirs, the words children and heirs shall not be construed to include said Elanor Lynch, my intention being that said Elanor Lynch shall not receive more than two thousand dollars of my estate under any circumstances.

"*Sixth.* I own an estate in remainder in the properties at present numbered three hundred and forty-five and three hundred and forty-seven State street, and numbered at present one hundred and nine, one hundred and eleven, one hundred and thirteen, one hundred and fifteen and one hundred and seventeen Fayette street, in the city of Perth Amboy, New Jersey, and my son-in-law, Jeppe Sondergaard, owns an estate for

life therein, and has the revenue therefrom during his life, out of which he is obliged to pay the taxes, water rates, insurance and other charges against said properties, and keep the same in good repair, and also to pay the interest on a mortgage of ten thousand dollars which I hold on said properties, and which is bequeathed to my wife Caroline Nelson in this will. I give and devise my estate in remainder in these properties, with the fixtures therein, to my executors, and their successors or successor, and the survivor or survivors of them in trust for the following uses and purposes: After the death of my said son-in-law Jeppe Sondergaard they shall manage said properties and collect the incomes therefrom, out of which they shall pay all current expenses for taxes, water rates, insurance, repairs, and a fair and reasonable compensation for their services, and the net income derived therefrom they shall apply to the payment of the said mortgage of ten thousand dollars, until the same is extinguished, as it is not my intention that there shall be any merger of said mortgage by reason of my holding an estate in remainder in said properties. After the payment of said mortgage I direct that the net income of said properties be divided into three equal parts, one part to be paid semi-annually to Emilie Sondergaard, the wife of Jeppe Sondergaard, if she survives her husband, the remainder to be put at interest for my children until they become of age, when it shall be turned over to them. If at any time the Fayette street properties have to be renovated or rebuilt, then the interest of said Emilie Sondergaard ends as well in the State street properties as in the Fayette street properties.

"*Seventh.* In case of the death of a child by my marriage with my present wife, before reaching the age of twenty-one years, or before marriage, the part of the deceased shall go to the surviving child or children by my second marriage. In case of marriage the part shall go to the surviving spouse, or, if there be children of the marriage, then to them, but in case of the death of all of my children by my present wife before reaching the age of twenty-one years, their mother surviving, the part herein given to them shall go to their mother for and during her natural life, and after her death to such of my children or their heirs as my said wife shall by will direct.

"*Eighth.* In case of the death of all my children and their heirs before my decease, then I direct that the properties herein devised to them shall be held in trust by my executors for my sons-in-law Jeppe Sondergaard and Michael Henry Nagle, and the children of my brother Hans Henry Nelson, in equal parts.

"*Ninth.* As I have deeded the old homestead to my daughter Dorothea Nagle, and she has had the full revenue or rents of the same for a number of years, I consider she has received all she is entitled to, as I consider her share is equal to the other children."

The testator appointed Harry Conard and his widow, Catherine Nelson, to be the executors of the will and gave them full power to dispose of any real estate, the sale of which might be necessary to carry out its provisions.

On August 3d, 1901, the testator owned the premises in Perth Amboy now covered by the mortgage which is sought to be foreclosed in the second suit. On that day he made a conveyance thereof to his daughter Andrea Sondergaard. Mrs. Sondergaard and her husband, by way of satisfying the consideration money, joined in a bond to Nelson for $10,000, payable in one year with four per cent. interest. To secure this bond they likewise joined in the execution of the mortgage in question. This transaction put the title in Mrs. Sondergaard, subject to the mortgage, and subject also to a prior mortgage for $10,000, concerning which there is no controversy. Mrs. Sondergaard died in 1902, leaving a will by which she gave all her property to her surviving husband, who, on August 26th, 1902, conveyed the mortgaged premises to Nelson, reserving to himself (Sondergaard) "the use and occupation of the said above-described premises for and during the time of the natural life of the said Jeppe Sondergaard." By the first item of the will this mortgage was bequeathed to Mrs. Nelson, the widow. After the testator's death, Mrs. Nelson and her co-executor joined in an instrument, in writing, by which the mortgage was assigned to Mrs. Nelson, and a few days later she assigned it to the complainant, who is now attempting to foreclose it. The particular provisions of the will touching said mortgage are found in item 6.

*Mr. Frank J. Higgins* and *Mr. Merritt Lane,* for the complainant.

*Mr. Thomas Brown* and *Mr. Freeman Woodbridge,* for the defendant Elanor Lynch.

*Mr. Adrian Lyon,* for the executors and Caroline Nelson, individually, and her children.

Howell, V. C.

It was claimed that the testator made no final disposition of his Perth Amboy real estate, and that if he did the same was void as contravening the rule against perpetuities. I do not find it necessary to discuss the question whether, under the terms of

the will, the period of the vesting of the estate is so remote as to violate the rule, for the reason that I deem it very plain from a careful reading of the instrument that he disposed of the income from his property only, and made no final disposition of the *corpus.*

The third item directs the executors to collect the income from the properties therein described; to make such disbursements as are necessary; and out of the remainder to pay the wife $200 per month; and to devote the remainder of the income to the payment of the interest and principal of the mortgage against the same. The testator then continuing his directions as to the income orders that the surplus thereof shall go to his wife, Catherine, and her two children, and shall be invested by the executors for their use and benefit; and that when these children come of age the fund so accumulated shall go to them in equal shares. It is quite manifest that in that item of the will there is no residuary devise. The fourth item deals with another block of property. It makes due provision for the collection of the rents and for disbursements incident to the ownership of the land, orders an investment of the income so that his wife, Caroline, may receive the interest of the accumulated income semiannually, and finally directs the division of this income accumulation to his wife and children when the children come of age. It is quite as manifest that there is no residuary devise of that property. The sixth item of the will deals with an estate in remainder, his son-in-law, Jeppe Sondergaard, holding the intervening life estate. There is in that item also distinct and particular directions about the income and an appropriation of it not only to the expenses of maintaining the property but to the payment of the mortgage which is sought to be foreclosed by the second bill. After all those payments out of the income the remainder thereof is to be accumulated for his children and to be paid to them when they come of age. Neither does that item contain any residuary devise. It was argued that there was a devise by implication to the testator's "children" of the residuary estate, but I am not able to find in the will any words which lead to any such result. I therefore come to the conclusion that the testator meant to and did deal only with the income from these

three pieces of property, and that as to the *corpus* thereof he died intestate.

But there are provisions in the will which prevent the heirs-at-law from taking immediate possession of the properties. Between the present time and period of distribution there stands a valid, active trust by virtue of which the executors and trustees have the right, and are in duty bound, to administer the income therefrom until the youngest of the testator's children shall arrive at the age of twenty-one years. This trust cannot be disturbed, nor can the executors and trustees be deprived of the possession of the property until the termination thereof according to the terms of the will, and, consequently, there can be no partition. *Smith* v. *Gaines, 39 N. J. Eq. (12 Stew.) 545; Roarty* v. *Smith, 53 N. J. Eq. (8 Dick.) 253.*

In *Simmons* v. *Hadley, 63 N. J. Law (34 Vr.) 227,* trustees under a will were in the possession of lands; they were sued in ejectment by one of the heirs-at-law who insisted that some of the purposes of the trust were void within the rule against perpetuities. There were, however, active trusts which were in course of execution, which were undoubtedly good, and it was held that ejectment could not be maintained until the determination of the valid trusts.

It is said that because Peter Nelson at one time held the mortgage and also had title to the fee in remainder, his equitable right merged in the legal right and extinguished the mortgage. It is a thoroughly well-settled rule that merger is not favored in equity and is never allowed unless for special reasons and to promote the intention of the party; and that where the equities are subserved by keeping the mortgage alive, and no injury or injustice is thereby wrought, it is not extinguished. *Clos* v. *Boppe, 23 N. J. Eq. (8 C. E. Gr.) 270; Hoppock* v. *Ramsey, 28 N. J. Eq. (1 Stew.) 413; Andrus* v. *Vreeland, 29 N. J. Eq. (2 Stew.) 394; Swayze* v. *Schuyler, 59 N. J. Eq. (14 Dick.) 75; Harron* v. *DuBois, 64 N. J. Eq. (19 Dick.) 657.* Practically the same rule exists in controversies in the common law courts where merger is favored. *Woodhull* v. *Reid, 1 Harr. 128; Thompson* v. *Boyd, 21 N. J. Law (1 Zab.) 58; affirmed, 22 N. J. Law (2 Zab.) 543; Duncan* v. *Smith, 31 N. J. Law (2 Vr.) 325;*

*Mulford* v. *Peterson, 35 N. J. Law (6 Vr.) 127; New Jersey Insurance Co.* v. *Meeker, 40 N. J. Law (11 Vr.) 18.* It seems that there should be added to the rule this qualification: If there is an intervening estate, encumbrance or equity, that of itself would be sufficient to prevent a merger of the mortgage with the equity of redemption, provided the encumbrance be not one which the owner has assumed to pay or one against which he is estopped from defending. *Jones Mort.* § *848.* This qualification was applied in the case of judgment liens in *Denzler* v. *O'Keefe, 34 N. J. Eq. (7 Stew.) 361.* There is, however, in the will evidence that the testator never meant that the estates should merge. Speaking of this particular mortgage he says: "As it is not my intention that there shall be any merger of said mortgage by reason of my holding an estate in remainder in said properties." Although this declaration was made six years after the conveyance of the equity of redemption to Nelson, it is held that the party in whom the assets legally and equitably are so united is not required to make his election that there should or should not be a merger immediately. He may wait until some other person is about to acquire an interest, and if he then does any act which clearly shows that he regards the equitable title as still subsisting, this is almost conclusive evidence that he did not intend that there should be a merger. *Clift* v. *White, 12 N. Y. 525; Security Title Co.* v. *Schlender, 190 Ill. 609; Jones Mort.* § *855.* I must hold therefore that the mortgage in question is a subsisting and valid lien upon the premises in question in the hands of Caroline Nelson, the original legatee thereof; but in making the bequest of the mortgage to his wife, the testator had a right to impose upon her and upon the gift such conditions as he chose, provided the same were not in themselves illegal. By the will he directs his executors, of whom his widow is one, to pay and satisfy the mortgage money out of the income of the property. The direction is this:

"After the death of my son-in-law, Jeppe Sondergaard, they (the executors) shall manage said properties and collect the income therefrom out of which they shall pay all current expenses for taxes, water rates, insurance, repairs and a fair and reasonable compensation for their services, and the net income derived therefrom they shall apply to the payment of the said mortgage of $10,000 until the same is extinguished."

The question then arises whether Mrs. Nelson (or her assignee) will be permitted to foreclose the mortgage in the face of her obligation as executor and legatee to see to it that it, principal and interest, shall be satisfied to her out of the net income of the premises. I pause here to say that the complainant as assignee stands in the shoes of Mrs. Nelson. The instrument of transfer was claimed by the complainant to give her a better position than Mrs. Nelson had and by the defendants to create some equity in favor of Elanor Lynch. I find, however, that it operates as a mere assignment of the mortgage, subject to all equities so far as the complainant is concerned, and that Elanor Lynch can make no claim under it.

The testator owned the mortgage and he owned the land. In uniting the two estates he could say whether they should merge or not. In separating them unmerged he had a right to say how they should be thereafter treated and what their future relation should be. If he had chosen so to do he might have released the lands in question from the lien of the mortgage, and by his will without other instrument have charged the mortgage debt in suit upon other and different lands. His dominion over the two estates was paramount and predominant. Mrs. Nelson could get only what he gave her. She cannot enlarge her right or abridge the right of other devisees. She takes title to the mortgage debt encumbered by the testator's peculiar notions as to the manner in which, and the fund from which, the same should be paid to her. And the complainant or transferee takes no other or greater right than Mrs. Nelson had.

While this argument points in the direction of preventing the complainant from foreclosing the mortgage against the remainder or the equity of redemption, I see no reason why foreclosure of it should not be permitted against the life estate of Sondergaard. It was Sondergaard's duty to pay the mortgage; the bond is his; he joined in the mortgage. Primarily, he is the one to pay it. When he created his life estate by the deed of August 26th, 1902, he assumed the burden, among other things, of paying the interest on the mortgage. He was, therefore, bound at law and in equity to pay both principal and interest of this ob-

ligation in the first instance. He certainly cannot evade these payments for the purpose of destroying or otherwise interfering with the remainder. In my opinion, as between the complainant and Sondergaard, the mortgage money was due and payable. By its terms it was due when the life estate was created and Sondergaard has no defence to the suit, nor indeed has he attempted to make any.

In addition to the fact that Mrs. Nelson is an executor of the will, and so stands in a fiduciary relation to all the parties in interest, there is yet another reason why the foreclosure of this mortgage as against the remainder ought to be held up, and that is that it is a settled doctrine of courts of equity and agreed on all sides that no man shall be allowed to disappoint a will under which he takes a benefit, or, as it was put by Vice-Chancellor Grey in *Bird* v. *Hawkins, 58 N. J. Eq. (13 Dick.) 246*, "he may not accept the benefits which a will confers without he also performs the duties which it imposes. This doctrine has been carried to the extent that one who accepted a benefit under a will given upon terms that the beneficiary should convey his own estate to someone else named by the testator, has been obliged so to convey away his own property." Mrs. Nelson cannot be heard to say that she will take the mortgage bequeathed to her, but will reject the provision for its payment from the income from the mortgaged premises. Her assignee is in the same position. It is clearly her duty to protect the remainder for whom it may concern, and not to give aid or countenance to any proceeding having for its object the destruction of their right.

The next question is whether Elanor Lynch and the complainant Dorothea Nagle can share in the residuary fund of which the testator died intestate. It is claimed that neither of them can so participate for the reason that they are excluded therefrom by particular and specific words of the will itself. As to Elanor Lynch, the testator declares that the demonstrative legacy to her of $2,000

"shall be in lieu of all interest to which she may be entitled to my estate by virtue of this will or otherwise * * * my intention being that said Elanor Lynch shall not receive more than $2,000 of my estate under any circumstances."

As to Dorothea Nagle, the words are: "I consider she has received all she is entitled to, as I consider her share is equal to the other children." Having these words in mind, are they sufficient to exclude these two persons from participation in the residuary fund above mentioned? A recent text-writer on this subject has declared that the courts are nearly unanimous in holding that where the testator does not by will dispose of the whole of his estate, no negative words of exclusion can prevent the remainder of the property from passing under the statutes of descent and distribution; that it not infrequently happens that the testator by name specifically provides that certain of his relatives shall not receive any part of his estate, and that in such case such a provision is entirely ineffectual as to intestate property. *Page Wills* § *467.* An early case on the subject is *Creswell* v. *Cheslyn (1762), 2 Ed. 124.* There the testator by his will gave his residuary personal estate to his three children in equal shares as tenants in common. Subsequently, by a codicil, he declared that C, one of his children, should not be one of his residuary legatees, and he gave to C a pecuniary legacy instead. It was held that as to one-third of his estate he died intestate, and that this share did not go to the other two, but went according to the statute of distributions. Lord Northington, L. C., says that the reason for the decision was that the testator had made no devise over of the share of which he had deprived one of his children, and that therefore the other two could have no greater interest than they had by the original will. He says: "I must therefore declare that the clear residue of the testator's personal estate, not specifically bequeathed, must be divided into three equal parts." The decree in this case was affirmed in the house of lords in *Cheslyn* v. *Creswell, 6 Bro. P. C. 1,* without an opinion. In *Pickering* v. *Stamford (1797), 3 Ves. Jr. 492,* Lord Loughborough declared that neither an heir-at-law, or by parity of reason the next of kin, can be barred by anything but a disposition of the heritable subject or personal estate to some person capable of taking, and that notwithstanding the words of the will he would take what was not disposed of. In *Johnson* v. *Johnson (1841), 4 Beav. 318,* Sir Lancelot Shadwell, vice-chancellor, dealt with a will which contained these words: "I direct that my wife, Harriet Johnson,

and her child, Harriet (whom I entirely disclaim), shall be cut off from any part of my property and shall not receive any benefit or advantage therefrom." It was held that these words did not exclude the widow and next of kin from sharing in the intestate property for the reason that there was no devise over of the shares of which the will had deprived them.

In *Harris* v. *Davis (1844), 1 Coll. C. C. 416*, Sir J. L. Knight Bruce, vice-chancellor, had before him a will in which the testator had given personalty to several of his children, including his son Henry; by a codicil he revoked all that part of his will which left a legacy to Henry, but made no devise over of that share. The vice-chancellor held that Henry's share of the residuary personal estate lapsed for the benefit of the next of kin, including Henry. In *Sykes* v. *Sykes (1868), L. R. 4 Eq. 200*, a testator by a codicil to his will revoked all the provisions in favor of his son Henry, and in lieu thereof placed in the hands of trustees a large sum of money upon trust to invest and hold the proceeds for Henry and his wife and children, but made no devise over. The case was heard before the master of the rolls and came before Lord Cairns, L. C., on appeal. He says: "I understand the law with regard to the construction of wills upon this point to be perfectly clear and well settled. If there be a devise or a bequest in a will to a number of persons *nominatim* as tenants in common, and if there be afterwards by codicil a revocation of the devise or bequest made to one of them, the share of the residue, the devise or bequest of which is so revoked, does not again fall into the residue, but becomes undisposed of for the heir-at-law or for the next of kin as the case may be. That was decided, if it had not been decided before, in the case of *Cresswell* v. *Cheslyn,* and for upwards of a hundred years it has governed the succession of property in this country." The same rule was applied in *Fitch* v. *Weber (1848), 6 Hare 145.*

In the case of *Gallagher* v. *Crooks, 132 N. Y. 338*, the will contained the following clause:

"He (John N. Gallagher) is to have nothing from my property, and I hereby cut off from inheriting anything or property of mine his wife (Rebecca) or any person in any way related to her either by blood or by marriage with the exception of himself, and he only in the way I have stated above."

It was found that the testator had died intestate as to some of his property and suit was brought by the widow and children of John N. Gallagher, who had died, to recover a share thereof. Follett, chief judge, says: "The clause in the will above quoted by which the testator attempted to disinherit his brother, his wife and their descendants, does not defeat the right of these plaintiffs to the estate unless the persons to whom the testator attempted to devise the remainder were in existence. In case a testator fails to make a legal devise of his realty, or if having legally devised it, the devise fails for any cause, the heir will inherit, notwithstanding there is an express provision in the will that he shall not take any part of the estate. There must be a legal devise to cut off the right of the heir to inherit. Mere words of disinheritance are insufficient to effect that purpose." The rule so announced seems to prevail in New Hampshire *Wells* v. *Anderson, 44 Atl. Rep. 103.* The two leading English cases above referred to—*Cresswell* v. *Cheslyn* and *Sykes* v. *Sykes*—were approved of by this court in *Burnet* v. *Burnet (1879), 30 N. J. Eq. (3 Stew.) 595,* in an opinion by Vice-Chancellor Van Fleet. In that case a legacy was void for the reason that the legatee was a witness to the execution of the will, and the question was whether that share fell into the residuary estate or whether as to it the will was not entirely inoperative. The vice-chancellor held to the broad principle that the will was inoperative, and that therefore as to that share the testator died intestate.

Finally, our court of errors and appeals, in *Graydon* v. *Graydon, 25 N. J. Eq. (10 C. E. Gr.) 561,* decided the point in a case arising under a will which provided that if the testator's son John should marry a certain person prior to a certain date, then, to use his words,

"my will is and I order that he take no part or share of my estate either of principal or interest, and the provision heretofore made for him is upon condition that he do not marry," &c.   *   *   *   "If he do I hereby declare such provision void and revoked,"

and in case he did so marry then his executors should dispose of his estate as if John were dead, in his lifetime, intestate and without issue. His son violated the provision by contracting the for-

bidden marriage, and the question was whether his widow and children, he having died, took any portion of the residuary estate. The chancellor held that they did not, but the court of errors and appeals declared that they were entitled to share in the residue upon the principle that the heir-at-law would not be disinherited except upon words free from doubt. No allusion was made to the principle of decision of the English cases, which is not only that the heir will not be disinherited except upon the clearest statement, but also that the failure to make a devise over of the forfeited share is sufficient in itself to show that the testator did not intend to debar the persons whose shares were forfeited from participating in the undisposed of residue. The rule was followed in *Canfield* v. *Canfield,* *62 N. J. Eq. (17 Dick.) 578.*

No cases are cited in the *Graydon Case* as authorities for the conclusion to which the court arrived. It appears, however, from the cases herein above cited that the judgment of Judge Dalrimple, who wrote the opinion, is founded on well-established principles. In accordance with these authorities, I must therefore hold for the purposes of the foreclosure suit that both Mrs. Nagle and Elanor Lynch are entitled to participate in the intestate property, as tenants in common, with the other interested parties. However, no directions can now be given in the suit for the construction of the will as to the eventual distribution of the residuary property so undisposed of. It is a well-settled rule that this court will not give directions concerning the distribution of a fund until the time for distribution arrives. The only directions which can be included in the decree will relate to the disposition of the income, and the interest thereon and the accumulation thereof as directed by the will. *Hoagland* v. *Cooper,* *65 N. J. Eq. (20 Dick.) 407.* Indeed, the point would not have been considered at this time if it had not been deemed necessary in the foreclosure suit. This view makes it unnecessary to determine presently whether the conveyance to the complainant of the homestead is or is not an advancement under our statute of descents.

The decree in the foreclosure suit may provide for a sale of the life estate of Jeppe Sondergaard, but for reasons herein above stated the sale will not affect the remainder.

Whatever moneys may be raised by a sale of the life estate will be credited upon the mortgage, and eventually it will be satisfied in the manner provided for by the will.