The executors and trustees of the estate of William A. Maxwell, deceased, ask for a construction of decedent's holographic will.
The first item of the will directs the payment of debts. The second is a bequest of silverware to decedent's daughters. *Page 248 
The third is a gift of their mother's bureau to such married daughter as might desire it. The fourth is a direction that all property, real and personal, other than the articles aforesaid, be sold and converted into cash, and this is followed by directions that the executors purchase suitable monuments for testator's grave, as well as that of his wife and two deceased children. The balance of his estate is ordered to be invested by his trustees, the income to be used for the maintenance of his three minor children until the youngest child reaches twenty-one years of age.
After the testator had provided as above in paragraph 3, he said:
"I give and bequeath to my Grand Daughter Gladeys Maxwell. Daughter of James H. Maxwell. Deceased the Sum of ten dollars I give and be-bequeath to my Grand Daughter Darthy her Sister the Sum of ten dollars the rest of my Estate I wish divided equal Share and Share alike."
The youngest child has attained the age of twenty-one years and the bill alleges that decedent "left surviving him as direct lineal descendants seven sons * * * and two daughters * * * and a granddaughter, Gladys Maxwell, the daughter of a deceased son, James H. Maxwell. At the time of the execution of the will, another child of testator was deceased, leaving no issue surviving. The deceased son, James H. Maxwell, had another daughter, Dorothy Maxwell, who predeceased the testator, having died on June 27th, 1933."
The bill further alleges that a construction of the will is necessary "by reason of the various constructions offered by the parties in interest of the last section of paragraph 3," which section is the one first above set forth.
The bill further alleges that:
"The surviving children of the testator claim that the entire will shows an intention on the part of the testator to maintain his infant children until they can take care of themselves, and thereafter to dispose of his entire estate amongst all his then living children, share and share alike, and that it was the testator's intention to provide for the children of *Page 249 
his deceased son, James H. Maxwell, by the giving of the two legacies only, and not for them to share per stirpes in the balance of the residuary estate."
The bill further discloses that:
"Gladys Maxwell, the testator's granddaughter, claims that in addition to the legacy of $10, she is entitled to receive a one-tenth part of said estate as the sole representative of her deceased father, James H. Maxwell, contending that the testator, having made no positive direction as to persons to share in his residuary estate, he must be considered as having died intestate thereto."
The first question for determination is, what was testator's intention, as gathered from a reading of the will, or does a reading thereof manifest his intention?
In the portion of the will preceding the third or disputed paragraph, testator had spoken of his daughters, married and single, and had made provisions for the three minor children during their minority. He had spoken of his two granddaughters and had not mentioned any of his seven sons and did not mention them, other than to appoint William as one of his executors.
Among whom shall the trustees divide the residue of the estate "equal, share and share alike?" His daughters? His sons? Or was it to be among all of his children, excluding his grandchildren, to whom he had already left $10 each?
I think it may be fairly gathered from a reading of the will that testator intended that the gifts to his grandchildren of $10 each was to be the sum total of their participation in his estate, and may further say that it is my thought that he meant that the residue of his estate should be divided equally among his seven sons and two daughters. But while such may be my thought, I may not so hold unless testator has used language from which such a holding may be justified, even though the result of my conclusions might be that testator died intestate as to the residue he attempted to dispose of.
Of course courts so seek to interpret a will as to avoid intestacy or partial intestacy. As stated in 28 R.C.L. 228, *Page 250 
"the abhorrence of courts to intestacy under a will may be likened to the abhorrence of nature to a vacuum."
But even so, it must not be overlooked that the courts will not make a will for the testator, but that "the function of the court is only to construe the will that testator has made." McGill v.Trust Company of New Jersey, 94 N.J. Eq. 657 (at p. 662);affirmed, 96 N.J. Eq. 331.
Without citing the many cases in this jurisdiction holding that the courts are loath to so construe a will as to permit intestacy, it may be well to quote from the case of Gourley v.Thompson, 34 Tenn. (2 Sneed.) 387:
"It is true that courts have always leaned to constructions which will avoid intestacy, and their swift willingness in this regard has passed into a rule of construction, but there are well defined limits, beyond which the courts have not gone, and beyond which they could not go without subverting all rules and leaving the interpretation of every will to the mere caprice and whim of the chancellor. One of these rules, firmly established and never departed from or even criticised, is that the expressed intent will not be varied under the guise of correction, because the testator misapprehended its legal effect. The testator is presumed to know the law. If the legal effect of his expressed intent is intestacy, it will be presumed that he designed that intent. The inquiry will not go to the secret workings of the mind of the testator. It is not, what did he mean? but it is, what do his words mean? In Bingel v. Volz, 142 Ill. 214;34 Am. St. Rep. 64; 31 N.E. Rep. 13, it is well said: `The purpose of construction as applied to wills is unquestionably to arrive if possible at the intention of the testator, but the intentionto be sought for is not that which existed in the mind of thetestator, but that which is expressed in the language of thewill.'"
It is argued that the court has power to effectuate the manifest intention of the testator by inserting omitted words, citing Den. Nelson v. Combs, 18 N.J. Law 27, as follows (atp. 28):
"When a testator has omitted words obviously necessary to express his meaning, and the intention can be plainly *Page 251 
gathered from the contents of the will, courts have considered it their duty to supply such omitted words, rather than do violence to his plain intention, by pertinaciously adhering to his words, without regard to the sense of the instrument." See, also, Den,ex. dem. Brown v. Mugway, 15 N.J. Law 330; Tzeses v. TenezConstruction Co., 95 N.J. Eq. 145; affirmed, 97 N.J. Eq. 501.
Under these authorities it is contended that this court is justified in writing into the will that which testator is alleged to have omitted, making the disputed paragraph read: "The rest of my estate I wish divided equal, share and share alike, among mychildren." It is quite evident that if the court may not, under the rules of construction, supply or designate beneficiaries of testator's residuary estate, that he died intestate as to that portion thereof, and intestacy or partial intestacy would result in the granddaughter, Gladys, getting the share of her deceased father.
It seems to me that the court should divide the clause in question into three parts, as follows: "I give and bequeath to my granddaughter, Gladys Maxwell, daughter of James H. Maxwell, deceased, the sum of ten dollars. I give and bequeath unto my granddaughter, Dorothy, her sister, the sum of ten dollars. The rest of my estate I wish divided equal, share and share alike."
By the division aforesaid, it seems apparent that the testator intended to limit his grandchildren to $10 each and if so it would seem to follow that the testator, in requesting an equal division of the balance, intended that that division should be among those of his relatives not excluded from participation by other provisions contained in the will, and the only beneficiary who would be thus excluded would be Gladys (the other named grandchild having predeceased testator), to whom the testator had made a specific bequest of $10.
That the testator meant to limit Gladys seems apparent. He said: "When my youngest child is twenty-one I wish my estate to be disposed of as follows:" I give to Gladys $10. I give to Dorothy $10. Having disposed of $20 out *Page 252 
of his estate, he directs that the rest be divided "equal, share and share alike."
It seems to me that it may not be presumed that, having limited the granddaughters to $10 each, he wanted them to share and share alike with his children.
Another reason for holding that the intention of the testator was as above set forth is that it certainly could not have been the intention of the testator that his grand-daughter should receive a greater portion of his estate than his own children, and if he had so intended he would have either made a larger bequest to each one of his grandchildren or would have made provisions for them to share in the remainder.
However correct the conclusion above reached may be, it still follows that unless the court may designate beneficiaries to take under the residuary clause aforesaid, that the testator died intestate as to that portion of his estate, and that Gladys will participate along with the children of the decedent.
In 69 Corp. Jur. 167 § 1194, the general rule is stated as follows:
"Residuary beneficiaries are to be determined by ascertaining the testator's intention as expressed in the terms of the will. No particular mode of expression is necessary to constitute a residuary legatee, but the failure sufficiently to designate the intended residuary beneficiary voids such bequest or devise, * * *."
And cites as authority for the rule Bruce v. Bruce, 90 N.J. Eq. 118,
as follows: "In construing a will, the court may not indulge in mere speculation as to who was intended as the beneficiary of a residuary clause."
In the case of Denton v. Clark, 36 N.J. Eq. 534, 536, the court said:
"The question always is, what the testator meant when he put his will in force by the act of executing it; and when, knowingly, at that period, he permits clauses to be so incomplete as to be nugatory, such clauses are no part of the testamentary plan, and consequently can reflect no light upon such plan." *Page 253 
The holding of the court is that testator died intestate as to his residuary estate by reason of his failure to designate the intended residuary beneficiaries.
At the final hearing, counsel produced witnesses to testify as to the attitude of the decedent towards his granddaughter, Gladys Maxwell, and her family, and also to testify as to certain statements made by the decedent that he had left $10 each to Gladys and her sister, Dorothy, and that these gifts were all he intended these grandchildren to have. This testimony was received by the court and the question of its admissibility reserved.
It will be observed that the evidence above referred to was intended to supply for the court a clue to the intention of the testator, but it will also be observed that that intention sought to be proved is nowhere disclosed in the will and the evidence was not admissible and is excluded by the court, with the further observation that the character of the testimony was not such as to have been of assistance even had it been permitted to stand.
In the case of Saving Investment and Trust Co. v. Crouch,93 N.J. Eq. 311, 313, the court said:
"The testator's scheme is plain enough, but the difficulty is that so much of it as is found extraneously is not reflected by the testament. No trace of it is discoverable there. Evidencealiunde is admissible in aid of the intention expressed in the will, but not to supply the intention. In other words, the intention cannot be sought in the circumstances surrounding the testator at the making of the will, if it is not somewhere seen in the will itself — that is, the will must attach to it the surrounding circumstances to clarify the testator's wish as indicated by his testament. The disposition of one's earthly belongings, after death, is a privilege of the statute and the manner must be found within the four corners of the testament." See, also, Bruce v. Bruce, supra; Nevius v. Martin,30 N.J. Law 465, 471; Griscom v. Evens, 40 N.J. Law 402, 407; affirmed,42 N.J. Law, 579; Leigh v. Executors of Savidge, 14 N.J. Eq. 124,130; Burnet's Ex'rs v. Burnet, 30 N.J. Eq. 595. *Page 254 
It is contended by counsel that it being apparent that the testator intended that Gladys should only participate in his estate to the extent of the specific legacy of $10, that her right to share in the residuary estate is defeated and that she is limited to the specific bequest.
The authorities are against this contention and even go to the extent that in case of partial intestacy the right of an heir-at-law and next of kin to share in an estate is not defeated by words of disinheritance in the will itself and that the testator can disinherit his heirs or next of kin only by leaving his property to others and that mere words of exclusion are not sufficient.
In Potter v. Watkins, 99 N.J. Eq. 538, the court held:
"The declaration in the will that she shall take nothing under the will if she refuses the gift means exactly what it says, but that does not deprive her of her dower in her own right nor from taking as distributee under the statute of that of which her husband died intestate. The right to take under the statute of distribution in case of partial intestacy is not defeated by the words of disinheritance in the will."
Among the many cases which might be cited is that ofSkellenger's Executors v. Skellenger's Executor, 32 N.J. Eq. 659
(at p. 663), wherein the court said:
"It is also insisted that the widow should not be permitted to take any part of this fund, because it is apparent, upon the face of the will, that the testator intended she should not. This intention, it is said, must be inferred from the fact that he gave her the use of the whole during her life, and he could not, therefore, have intended that she should take a part absolutely. * * * This argument, it will be observed, proceeds upon the assumption that the right of distribution is to be regulated by the intention of the testator. But this, I think, is a mistake. The intention of the testator is to govern only so far as he has declared it by his will. With regard to that part of his property which his will did not pass, it must be declared he had no will, and therefore the court cannot know his intention concerning *Page 255 
it. The next of kin cannot take until intestacy is found, and then they take, not in pursuance of the testator's intention, but by force of law, regardless of what his intentions were."
To like effect are Nagle v. Conard, 79 N.J. Eq. 124; Ward
v. Dodd, 41 N.J. Eq. 414; Graydon's Executors v. Graydon,25 N.J. Eq. 561, and Linell's Administrator v. Linell, 21 N.J. Eq. 81.
Complainants are therefore advised that distribution of the residuary estate must be made under the statute and that Gladys is entitled to share therein. *Page 256