MARY L. TYNDALE et al., executrices, &c.,

*v.*

MINNIE SMITH MCLAUGHLIN et al.

[Submitted April 8th, 1915.   Decided July 10th, 1915.]

1. The jurisdiction of equity to construe a will can only be invoked when such construction involves some· equitable relief, and will not be exercised, in construing a will in respect to the devolution of title to real estate, where no equitable relief to such real estate is sought; but where the bill claimed that certain property of the estate vested in complainants as heirs-at-law, the cross-bills of the answering defendants, some of the nephews and nieces, alleged that complainants had but a life interest in the property and that the remainder was in defendants or their survivors, that complainants in their capacity ·as trustees and life tenants through mismanagement had permitted some parts thereof to be sold for taxes and had conveyed other parts, and prayed that complainants be required to redeem, and that they account for the proceeds of the sales, and for their removal from office, remedied any defects in jurisdiction, since the facts set up and the relief prayed for were cognizable in equity.

2. Under a will dealing with each piece of property singly, a paragraph, requesting the executors to hold the property, consisting of two separate lots, to keep it leased, and after paying taxes and expenses, to divide the balance between his two daughters, and that in case of either dying the buildings to be kept leased and the net income of the deceased should be divided. equally between testator's nephews and nieces, and that at the decease of both daughters the property should be sold and the· proceeds divided equally between such nephews and nieces or their survivors, the nephews and nieces were not the residuary beneficiaries, and took nothing except the property mentioned in such paragraph, so that the daughters, as heirs-at-law or next of kin, were entitled to property, real and personal, not finally disposed of.

3. In construing a will the testator's intention must be gathered, either expressly or by implication, from within the four corners of the will.

4. The court leans toward a construction of a will which will prevent intestacy, but the will must furnish the basis for such construction, and if the testator, through ignorance or inadvertence, fails to dispose of all his estate, the court cannot supply the omissions.

5. Under a paragraph of a will, providing that part of a tract should be leased for twenty-one years, with a renewal of twenty-one years more, the net income to be divided equally between testator's two daughters during their life and at their decease to their lawful heirs, the daughters, after they had passed the child-bearing period and when their nieces and nephews were their heirs presumptive, had an estate in the land for a term of years only, and did not take a fee under the rule in *Shelley's Case* that when the ancestor, by any gift or conveyance, takes an estate of freehold, and in the same gift or conveyance an estate is limited either mediately or immediately to his heirs in fee or in tail, "the heirs" are words of limitation of the estate and not words of purchase.

6. Such paragraph did not carve out a trust estate in the daughters as executrices to last for forty-two years, the net income of which was to be paid them during their lifetime and upon their death and until the trust terminated to their heirs, as if the words "at their decease to their lawful heirs" related to the income and not to the *corpus*, but left the land to the executrices not to be sold for forty-two years in their lifetime, during which period they were to have the income, with remainder to their respective heirs-at-law as purchasers, the fact that the daughters survived the term of years created by the trust not altering the remainderman's estate, but simply postponing its enjoyment; the daughters in the meantime having an estate for life by operation of law.

*Mr. Atwood L. DeCoster* and *Mr. Harrison P. Lindabury,* for the complainants.

*Mr. Samuel Craig Cowart* and *Messrs. McDermott & Enright,* for the defendants.

BACKES, V. C.

The settlement of this controversy requires the construction of the last will and testament of Joseph West, deceased, late of the city of New York. It was executed four days before his death, and reads as follows:

(1) "First: I appoint my daughters Mary L. and Josephine
S. West executrix and Thomas West my nephew of Englishtown Monmouth Co. New Jersey Executor without giving any security for the same.

(2)    I also direct my Executors to sell the house and four lots of ground where I now reside one half of the proceeds to be placed on Bond and Mortgage in the city of New York and the remainder to pay my debts and mortgage on the house 83 Amity St.

(3)    I also authorize them to apply to the court to sell the house thirty seven Forsyth St. which half belonged to my late brother Thomas S. West and the income of said house that is his share, has been paid to my mother during her life. The proceeds of my late brothers half to be divided according to law. Also wish them to dispose of the farm in Macomb Co. Illinois which belonged to my late father Thomas West to be sold and the proceeds divided according to law I consenting to loose all the taxes which I have paid on said farm since my fathers death.

(4)    I hereby authorize them to sell the gore of land corner of Plane and State Streets situated in Newark New Jersey occupied by a stone cutter and apply the proceeds to the payment of my debts and assessments. Also a gore of land in rear of the corner of State and Broad streets in the city of Newark New Jersey now leased for twenty one years—to be sold at any time they think best and the proceeds to be used for the same purpose as the one before mentioned. Also a tract or parcel of land situated in the city of Newark New Jersey running from Belleville Av. to Mount Prospect Av. containing nearly twelve acres of land. The whole front which is left after opening streets on Belleville Av. and to the depth of about one half of said ground to be leased by my Executors for twenty one years with a renewal of twenty one years more. The nett income to be divided equally between my daughters Mary L. and Josephine S. West during their life separate and apart from their husbands— at their decease to their lawful heirs.

(5)    The rear half on Prospect Av. to be sold and after paying taxes and assessments the balance to be invested on Bond and Mortgage.

(6)    I wish my Executors to hold the property situated, one, forty five Fulton street,—the other eighty three Amith street in the city of New York now leased—to be kept leased or rented and after paying taxes and all other expenses the balance to be equally divided between my daughters Mary and Josephine S. West. In case of either dying the buildings to be kept leased or rented and the nett income of the deceased shall be divided equally between my nephews and nieces, Thomas West, Thomas Skidmore, Joseph Skidmore, Joseph W.—John—William Christina and Mary Deacon Christina Stevens—Mary Frances—Sarah Elizabeth—Margaret Joseph and George West.

> At the decease of both daughters the property shall
> be sold and the proceeds divided equally between the
> aforesaid nephews and nieces or the survivors.
>
> (7) As soon as convenient I wish my Executors to pay my
> brother in law Frances Deacon two hundred dollars and
> my nephew Thomas West five hundred dollars for his
> services.
>
> (8) All moneys advanced by me to Bartholomew McGowan I
> give him.
>
> (9) I also wish my Executors to pay to each of the chil-
> dren of William and Mary C. Hays of Tuckahoe West-
> chester Co.—Harriet—Ida—Sarah Lavinia—Fanny
> and Winfield Hays—when they arrive to the age of
> twenty-two years."

In the above, the paragraphs and lines of the instrument are followed. The paragraphs have been numbered by me for convenience and ready reference.

The deceased died in 1871, leaving two daughters, the executrices, who were then young women and unmarried, and also several nieces and nephews, some of whom are mentioned in the will. The executor named in the will did not qualify. The will was first proved in the county of New York, and was later admitted to probate in this state by the surrogate of Essex county. Of the twelve-acre tract in Newark, the rear half, fronting on Prospect street, has been sold by the executrices, while the remaining half, fronting on Belleville avenue, has been under lease by them, as directed, for more than forty-two years last past. By their bill, the complainants allege that as to the unsold half of the tract their father died intestate, and that it now vests in them as his heirs-at-law, and they pray that the will be construed and that it be determined in whom the title is vested, and if it should be held that it is not in them as heirs-at-law, that the property be sold for the benefit of the persons entitled thereto. The answering defendants, some of the nephews and nieces, filed cross-bills in which they set up that the complainants have but a life interest in the estate, and that the remainder is in the nephews and nieces, or their survivors, under the provisions of the will; that in their capacity as trustees and life tenants of the unsold half of the tract, the complainants, through mismanagement, have permitted some parts thereof to be sold for unpaid taxes, and that without legal right they conveyed

other portions; and they pray that the complainants be compelled to redeem; that they account for the proceeds of the sold portion of the tract, as well as of all of the rest of the personal property, and that they be removed from office and others be substituted.

If the cause stood on bill and answer only, the relief prayed by the complainants could not be granted, because of the familiar rule that the jurisdiction of this court to construe a will can only be invoked when such construction involves some equitable relief, and will not be exercised in construing a will in respect to the devolution of title to real estate where no equitable relief to such real estate is sought. *Hoagland* v. *Cooper, 65 N. J. Eq. 407.* But, the cross-bills remedy any defect in jurisdiction, for the facts they set up, and the relief they pray, are clearly cognizable in equity. *Dan. Ch. Pl. & Pr. (6th Am. ed.) 1553; Story Eq. Pl. (10th ed.) 373; Pennsylvania Railroad Co.* v. *National Docks Co., 52 N. J. Eq. 555; Cathcart* v. *Robinson, 5 Pet. 264.*

So, we may proceed to construe the will, which both the complainants and the defendants desire.

The first question to be considered is: Are the nephews and nieces the residuary beneficiaries under the will? For, if they are not, then the testator died intestate as to some of his estate. They claim to be such by virtue of the closing sentence of the sixth paragraph of the will, which reads:

"At the decease of both daughters the property shall be sold and the proceeds divided equally between the aforesaid nephews and nieces or the survivors."

This provision, in my opinion, is plainly referable and limited to the property mentioned in the paragraph of which it is a part. To give it any broader scope would do violence to the express intention of the testator. In the process of drafting his will, the testator seems to have dealt with each piece of land, or group, singly and individually, making provision for conversion and administration of each, but without giving much thought to finality of disposition. The proceeds of the Fulton and Amity street houses (the subject of the sixth paragraph) he intended should eventually go to certain of his nephews and nieces, but

not until after the death of his daughters, each of whom was to enjoy one-half of the net rents during her lifetime; the nephews and nieces to take the deceased daughter's share during the life of the survivor. For the carrying out of this, an active trust was created, confined to the two New York houses. These two buildings and tracts of land, although widely separated, are spoken of in the opening sentence of the paragraph as "the property," and it is this same "the property" which the closing sentence orders to be sold, after the termination of the trust, the proceeds of which is to be divided between the nephews and nieces. This paragraph, like all others of the will, is entirely inclusive. Furthermore, if we should assume, as the defendants contend, that the testator intended to give his daughters only a life right in the whole of his estate, this, in view of the fact that the will makes no direct and explicit disposition of the remainder, cannot be entertained to expand the provision under consideration into a residuary clause, for the very profound reason that at the time the will was made the testator's daughters were of a marriageable age, likely to have offspring, and it would be a harsh and unthinkable assumption that he intended to prefer the collateral to his prospective lineal descendants.

It is also urged that because of the execution of the will, and the presumption therefrom that the testator intended to make a complete disposition of his property, the provision which is applicable only to the two New York properties, should at all events be seized upon to prevent intestacy. This, I apprehend, cannot be done. We might as well attempt to read into the will the amounts the testator intended to leave to the five persons named in the last section, as to impose upon it, as a residuary disposition, this wholly foreign clause. The testator's intention must be gathered from within the four corners of his will. What he has there laid down, either expressly or by implication, the court construes, and the leaning will always be toward a construction to prevent intestacy. *Leigh* v. *Savidge, 14 N. J. Eq. 124; Yawger* v. *Yawger, 37 N. J. Eq. 216; Carter* v. *Gray, 58 N. J. Eq. 411.* But, the will must furnish the basis for the construction. If the testator, through ignorance, inattention or inadvertence, fails to dispose of all of his estate, it is not within the

power of the court to supply the omissions. The province of the court is to construe, not to make, wills.

The defendants take nothing under the sixth paragraph, except the property therein mentioned; and as to property, real and personal, not finally disposed of, the complainants are entitled as heirs-at-law or next of kin.

The next question presented is: Do the nephews and nieces take anything of the unsold half of the twelve-acre tract in Newark, by virtue of the fourth paragraph, which the testator directed his executors to lease for twenty-one years, with a renewal of twenty-one years more?

"The nett income to be divided equally between my daughters Mary L. and Josephine S. West during their life separate and apart from their husbands—at their decease to their lawful heirs."

The daughters are now above the age of sixty, and doubtless beyond the child-bearing period. The nephews and nieces are their heirs presumptive, who, as such, claim that they will take directly from the testator, as the persons designated to receive his bounty, at the termination of the life estate.

The contention of the complainants is that they are owners in fee under the rule in *Shelley's Case,* but that cannot be, because the estate of the daughters in the land, whether we regard it as equitable, due to the interposition of trustees (*Shugrue* v. *Long, 82 N. J. Law 717*), or legal, because of a merger of the equitable into the legal estate (*1 Perry Trusts (6th ed.) 570*) is for a term of years only, and the rule is that only "when the ancestor, by any gift or conveyance, takes an estate of freehold, and in the same gift or conveyance an estate is limited either mediately or immediately to his heirs in fee or in tail; * * * *the heirs* are words of limitation of the estate and not words of purchase." *Shelley's Case, 1 Coke 104a; 76 English Reprint 234; Daniel* v. *Whartenby, 17 Wall. 639.*

The next claim which they press is that the testator, by implication, at least, carved out a trust estate in the executors, to last for forty-two years, the net income of which, and only that, was to be paid to the two daughters during their lifetime, and upon their death and until the trust terminated, to their heirs, and

that inasmuch as no provision was made to cover the remainder, after the trust ceased, the testator, as to it, died intestate; the point being that "at their decease to their lawful heirs" relates to the income and not to the *corpus*. The text, it is true, permits this interpretation, but, it seems to me, that taking into consideration the object of the testator and the subject-matter of the gift, the quoted words were intended to have a wider significance. The view I indulge of this devise is that the land was to be held by the executors and not to be sold for forty-two years, in the lifetime of the daughters, during which period they were to have the income. At their death, in that time, or thereafter, the fee was to vest in their respective heirs-at-law as purchasers —now, presumably, the defendants. The fact that the complainants have survived the term of years created by the trust does not alter the defendants' estate; it simply postpones the enjoyment—in the meantime, an estate for life is in the complainants, by operation of law. The reason for the rule of construction applied by the court of errors and appeals in the case of *Shugrue* v. *Long, supra*, is relevant. There the question was whether "heirs," so used as to ordinarily bring into operation the rule in the *Shelley Case*, had that effect, if it appeared that the testator did not use it according to its technical meaning. And after giving instances and illustrating under what circumstances that term annexed to an estate for life or other freehold will be regarded as of limitation or of purchase, Judge White, speaking for the court, said:

"While, therefore, it is well settled that the rule in *Shelley's Case* is absolutely and peremptorily controlling as 'a rule of property' whenever it appears that the limitation over is to the 'heirs,' taking as such 'heirs,' of the life tenant, quite irrespective of the desire or direction of the testator that the first taker should take only a life estate (*Lippincott* v. *Davis, 59 N. J. Law 241*), nevertheless, if it appears that the testator did not use the word 'heirs' in this, its technical sense, but, on the contrary, used it as a mere *descriptio personarum* of the objects of his, the testator's own direct bounty, the rule has no application whatsoever. *Harg. Law Tr. 574, 576; Fearne Rem. 188.*

"What will indicate such use by the testator of the word 'heirs' in the latter and popular, as distinguished from its technical sense, must necessarily vary in different cases."

"Another indication established by text-writers and decisions of a use by a testator of the word 'heirs' as a word of purchase, and not as a word of limitation, occurs where the life estate is only an equitable estate and the remainder is a legal estate. Thus, where property is devised under an active trust for the benefit of a life tenant and then the legal estate is devised at the death of the life tenant direct to his heirs, the word 'heirs' cannot be taken to have been used to indicate a succession or inheritance of the legal estate from the life tenant, because the life tenant never held the legal estate."

The case in hand only furnishes an additional example for the application of this doctrine. Here, of course, we have no battle with the rule in *Shelley's Case,* because the testator devised the lands in trust for a term of years. The devise over to the "lawful heirs" could not, therefore, in law, effect an estate in fee in the ancestor. From this it is to be concluded that the testator could not have employed the terms according to their technical meaning; and it follows that the only reasonable construction to be given to their use is that he intended thereby to nominate as takers of his estate, after the death of his daughters, those who stood in the relation of heirs-at-law to them. As such, the defendants, nephews and nieces, are now entitled to be protected against waste of their prospective inheritance.