In the matter of the estate of MARY A. ROGERS, deceased.

[Submitted December 29th, 1919. Determined January 20th, 1920.]

1. Where a will gave "all my wedding presents to Ida; all the money I possess to Ida; my business and real estate to be equally divided between my children," naming them—*Held*, that the testatrix died intestate as to notes owned by her at her decease.

2. Where the context of a will shows the intent of a testator to attribute to the word "money" a specific meaning, that meaning will be adopted and may comprehend any class of property so defined by the context.

3. Since it is ordinarily the purpose of a testator to dispose of his entire estate, there is a presumption of such intent on his part in the absence of any indication to the contrary.

On appeal from the Camden county orphans court.

*Mr. John F. Harned,* for the appellant.

*Messrs. Carr & Carroll,* for the respondents.

LEAMING, VICE-ORDINARY.

This appeal relates alone to the determination of what persons are entitled to certain promissory notes owned by testatrix at her decease.

The will of testatrix provided as follows:

"I, Mary A. Rogers, of sound mind, give all my wedding presents to Ida. All the money I possess to Ida. My business and real estate to be equally divided between my children, Ida, John, Lena and Mary. Ida E. Heaton to be executrix."

The notes are claimed by Ida under the money bequest. The other children claim that the notes passed under the bequest of the business of testatrix.

The circumstances disclosed by the evidence from which it is urged that the word "business" referred to the notes are the fol-

*91 N. J. Eq.* In re Rogers' Estate.

lowing: Although testatrix, in fact, owned no business and owned no interest in any business, yet there was a business in the success of which she was vitally interested. It had long been the business of her husband and source of the family support, and had been acquired by her oldest son prior to her husband's death. As a part of the consideration of the sale of that business from her husband to her son, her husband had received during the remainder of his lifetime a weekly stipend from the son, and after her husband's death that weekly stipend was to be paid to her for her life by her son, and was so paid. Upon the success of that business measurably depended the son's ability to continue those payments. The notes here in question were for money testatrix had loaned that son, after her husband's death, and the testimony indicates that the money may have been used by the son in that business. These circumstances, it is urged, indicate that word "business," as used by testatrix, referred to the notes which, to her mind, represented her interest in the business. That suggestion, it is claimed, is fortified by the structure of the will, since testatrix disposed of four distinct kinds of property, her "wedding presents," her "money," her "business," and her "real estate," and necessarily knew she had no business in the sense that word is ordinarily understood; that the word referred to something definite in her mind which she intended to give, and force must be given to it if the meaning intended can be ascertained, since it cannot be said that wedding gifts, money and real estate each represented to her mind a separate and distinct portion of her estate, and that the word "business" had no such significance to her. From these circumstances it is urged that standing in the shoes of testatrix with her untrained mind —with a mind untrained in a distinction between owning an interest in a business in which her money, represented by the notes, reposed and which money she expected to be paid to her out of the earnings of that business, and that of being a mere creditor of the real owner of the business—it is apparent that from her viewpoint the language adopted by her was an appropriate and adequate description of and related to the notes representing the money which she had put in the business and which to her mind

represented the extent of her interest in the business, even though, in law, the money was due her from her son and not directly from the business. This general view was adopted by the learned judge of the orphans court.

But is it not reasonably obvious that a conclusion thus reached, which attributes to the word "business" an artificial meaning which in no way belongs to the word in either its technical, ordinary, colloquial, or even occasional, use, is purely and fatally conjectural, in that it ascertains, at most, that which testatrix, perchance, may have intended, with no adequate assurance that such an intent in fact existed? Indulging this broad field of conjecture one may well be impressed that in the use of the word "business" testatrix may have in fact referred to the business formerly owned by her husband and not to the notes, since she received all of her husband's property by his will and her son had not fully discharged all of his obligations arising from his acquisition of that business; it would seem quite as natural and probable that testatrix may have conceived that business to have belonged to her under her husband's will, by reason of the unfulfilled obligations of her son arising from what she may well have regarded as a conditional transfer to him, as to have conceived notes given to her by her son for purely personal loans of money to him as her "business." Either view, to my mind, is essentially a guess, touching the intention or meaning of testatrix in the use of the well-known word here in question, unsupported by satisfactory or adequate evidence of that intent.

The word "money," standing alone and uncontrolled by the context of a will, refers to the circulating medium and does not embrace promissory notes. This was specifically determined in this state in *Beatty's Executor* v. *Lalor, 15 N. J. Eq. 108*, and appears to be uniformly recognized by all authorities which have been brought to my attention. See *Wms. Exrs.* *1024; 2 Benj. Wills* *769; 1 Schoul. Wills (5th ed.)* § *505; 18 Rul. Cas. L. 1270*. But where the context of a will clearly discloses that it was the intent of a testator to attribute to the word "money" a specific meaning which is more comprehensive, that meaning

will be adopted and may comprehend any class of property so defined by the context. See authorities above cited.

In the will here under consideration the context in no way enlarges the natural and ordinary significance of the word "money;" if any light can be said to be afforded by the context it appears to be to the contrary effect, since testatrix distinguishes wedding presents, money, business and real estate.

The only element in the case that in the slightest degree suggests the propriety of giving to the word "money" an enlarged significance is the circumstance that unless the promissory notes were intended by testatrix to pass either as "money" or "business" partial intestacy will result. Since it is ordinarily the purpose of a testator to dispose of his entire estate there is a presumption of such an intent on his part, in the absence of any indication to the contrary. But a testator may either through design or oversight remain partially intestate, and such cases are not infrequent, and a reasonably extended research has not brought to my attention any authority in which a word or clause of a will which is of plain or well-recognized meaning will be given a different meaning, in the absence of contextual aid, by mere force of a presumption against partial intestacy. See *Woodruff* v. *White, 78 N. J. Eq. 410, 415; Stout* v. *Cook, 79 N. J. Eq. 573, 576; Leigh* v. *Savidge, 14 N. J. Eq. 124, 134.*

I am impelled to conclude that testatrix died intestate as to the promissory notes here in question, and that the decree of distribution must be modified to that extent.