This is a bill seeking the construction of the will of Michael A. Devine, late of the City of Atlantic City. Mr. Devine was, during his lifetime, a successful businessman. He had been a realtor and insurance broker for many years and had accumulated a sizeable estate. His will was executed November 15th, 1938, and the first codicil on the 21st day of that month and year. The second codicil was executed on April 8th, 1941. Mr. C., a member of the bar of this state of high standing and ability, drew all three of these documents, but not with equal demonstration of that ability, and while the evidence does not disclose the fact, the court and counsel realize that Mr. C. was, as of April, 1941, suffering a decline both mentally and physically. This condition is emphasized by comparing the terms of the will and the first codicil with those of the second codicil.
A general survey of the will and first codicil demonstrates that the testator intended to dispose of his entire estate and that that desire was met by the terms of the will and first *Page 141 
codicil. It is the second codicil which causes most of the confusion and necessity for the aid of this court.
By testator's will he left all of his household good, clothing, jewelry and personal effects unto his wife, Lucinda E. Devine. He then provided two bequests for the purpose of having masses said for the repose of his soul and that of his wife and of deceased members of his family. He then bequeathed $30,000 in trust for the benefit of Lewis Clark and Marette Clark, they to receive the income therefrom on the first day of each month during the term of their natural lives and on the death of both, the principal and accumulated income to go to his residuary estate for distribution as provided in the sixth clause of his will. He then, by clause 6, bequeathed and devised all the rest, residue and remainder of his estate, real, personal and mixed, in trust, with directions that there be paid on the first day of each month to his sister, Mary T. Devine, $100 for her life, with the balance of income to be paid on the first day of each month to his wife, Lucinda, for her life, and after her death to pay that balance unto his sister, Mary T. Devine, his niece, Margaret Devine and his nephew Harry J. Devine, his nephew and niece, Lewis and Marette Clark and Effie Clark and Margaret C. Dunn, for and during the life of Mary T. Devine, if she survived his wife.
The widow is now deceased but Mary T. Devine survives.
By clause 6 of the will he provided that "upon the arrival of the time fixed for the non-payment of income under clause 5 (d) of this will," that all of his estate, real, personal and mixed, together with accumulated and undistributed income, should be distributed to the beneficiaries named in subdivisions (a) to (w), both inclusive. He thus disposed of his entire estate, based on the percentages set forth in the subdivisions of paragraph 6 aforesaid.
By the first codicil to the will testator changed subclauses (o), (q) and (v) of his will and added a new clause, (x). These changes in nowise affected the entire disposition of the estate,i.e., the will and codicil, taken together, disposed of all the real, personal and mixed property of which decedent died seized. *Page 142 
In the second codicil testator made various changes as to the bequests mentioned in the will and first codicil and it is contended that in so doing testator failed to dispose of 25/280ths of his estate and the contention is that he died intestate at least in so far as this portion thereof is concerned.
Rather than take up in order the questions propounded by the bill, it will serve, for brevity, if the court first determines whether or not the testator died intestate as to any portion of his estate, and this question must be answered by a careful scrutiny of the terms of the will and the two codicils, having in mind at all times that the law abhors intestacy and that it is the duty of the court to construe the will, if possible, so that it will pass all that the testator possessed, Tzeses v. TenezConstr. Co., 95 N.J. Eq. 145; 122 Atl. Rep. 371; affirmed,97 N.J. Eq. 501; 128 Atl. Rep. 388; Baldwin v. Baldwin, 107 N.J. Eq. 91; 151 Atl. Rep. 741; National Newark, c., Co. v. Arthur,c., Blind Babies, 113 N.J. Eq. 313; 166 Atl. Rep. 635; SecondNational, c., Co. v. Borden, 113 N.J. Eq. 378;167 Atl. Rep. 224; Bankers Trust Company of New York v. Greims, 115 N.J. Eq. 102; 169 Atl. Rep. 655; affirmed, 117 N.J. Eq. 397;176 Atl. Rep. 112; Parmentier v. Pennsylvania Company, c., 122 N.J. Eq. 25;192 Atl. Rep. 62; affirmed, 124 N.J. Eq. 272; 1 Atl. Rep. 2d332; Fidelity Union Trust Co. v. Laise, 127 N.J. Eq. 287;12 Atl. Rep. 2d 882; Herbert v. Central Hanover Bank andTrust Co., 131 N.J. Eq. 330; 25 Atl. Rep. 2d 7; affirmed,132 N.J. Eq. 445; 28 Atl. Rep. 2d 544; that the leaning will always be toward a construction to prevent intestacy,Tyndale v. McLaughlin, 84 N.J. Eq. 652; 95 Atl. Rep. 117;Schaefer v. Gessler, 121 N.J. Eq. 42; 188 Atl. Rep. 439; that a testator is always presumed to have intended to dispose of his entire estate and if such an intent can be found in the expressed provisions of the will the court, if possible, will so construe it, Leigh v. Savidge, 14 N.J. Eq. 124; Bonnell v. Bonnell,47 N.J. Eq. 540; 20 Atl. Rep. 895; In re Rogers' Estate, 91 N.J. Eq. 294; 109 Atl. Rep. 16; Federal Trust Co. v. Ost, 120 N.J. Eq. 43; 183 Atl. Rep. 830; affirmed, 121 N.J. Eq. 608;191 Atl. Rep. 746; that where there is a residuary clause in the will *Page 143 
the courts have a strong disposition so to interpret it as to prevent an intestacy. Yawger's Exr. v. Yawger, 37 N.J. Eq. 216; Tyndale v. McLaughlin, supra; Bruce v. Bruce, 90 N.J. Eq. 573; 107 Atl. Rep. 434; Second National, c., Co. v.Borden, supra; Parmentier v. Pennsylvania Company, c., supra;Brooks v. Goff, 127 N.J. Eq. 115; 10 Atl. Rep. 2d 466;
that the presumption against intestacy is particularly strong where the subject of the gift is the residuary estate; BankersTrust Company of New York v. Greims, supra; Fidelity UnionTrust Co. v. Laise, supra; Brooks v. Goff, supra; that when the residue is given every presumption is to be made that the testator did not intend to die intestate; Brooks v. Goff,supra; that in the absence of something in the context in the circumstances of the case to exclude the natural import of the words of a will, the court is bound to give them effect according to their plain grammatical sense, and accord to them their natural meaning, Courter v. Stagg, 27 N.J. Eq. 305; Burnet v.Burnet, 30 N.J. Eq. 595; Marshall's Exrs. v. Hadley, 50 N.J. Eq. 547; 25 Atl. Rep. 325; Woodruff v. White, 78 N.J. Eq. 410;79 Atl. Rep. 304; affirmed, 79 N.J. Eq. 225; 81 Atl. Rep. 1134;Stout v. Cook, 79 N.J. Eq. 573; 81 Atl. Rep. 821; Hollinshead
v. Wood, 84 N.J. Eq. 492; 94 Atl. Rep. 618; Supp v. SecondNational Bank and Trust Co., 98 N.J. Eq. 242; 130 Atl. Rep. 549;First National Bank, c., v. Levy, 123 N.J. Eq. 21;195 Atl. Rep. 820; Fidelity Union Trust Co. v. Lowy, 123 N.J. Eq. 90;196 Atl. Rep. 269.
First as to the will itself. In paragraph 6 testator said, "I give, bequeath and devise all of my real, personal and mixed property, including accumulated and undistributed income." He then devised his residuary estate in such manner as to eventually dispose of his estate in its entirety. Of this there can be no question, nor is there any dispute.
Testator having disposed of his entire estate as aforesaid, further evinced his desire to avoid intestacy by providing in paragraph 7: "In case of any of the religious or other institutional beneficiaries or individuals above mentioned cease to exist and no disposition of those shares is made in this will, *Page 144 
such residuary estate as may be thereby created I give, bequeath and devise in equal shares to those legatees for whom I have made provision in clause 6 of this will," again clearly evincing an intent to die testate and not intestate.
As said above, the first codicil of November 21st, 1938, did not in any way change the ultimate and final disposition of testator's entire estate, and in addition thereto testator, in that codicil, ratified and confirmed his will in all respects.
By the second codicil testator revoked clause 1 of the first codicil, reinstating clause (o) of paragraph 6 of his will. He then revoked clause 4 of the first codicil and in lieu thereof changed subclause (x) of paragraph 6 of his will and then ratified and confirmed the codicil of November 21st, 1938. He then changed the beneficiary in clause 3 of his will and then in clause 6 of the second codicil eliminated his nephew "Harry J. Devine" as a beneficiary under clause 5, subdivision (d) and re-wrote that clause. (It will be noted that testator said that he was striking out the name of his nephew, Harry J. Devine, from "clause 5 of subparagraph (d)" of his will. Reference will be made to this hereafter.) Testator then, in paragraph 7, revoked subclause (g), (i), (l), (m), (n) and (v) of paragraph 6 of his will and in so doing did not designate any other beneficiary in the place and stead of those mentioned in the revoked paragraphs, and it is by reason of this that it is contended that testator died intestate as to 25/280ths of his estate.
The result of intestacy as to 25/280ths would be that that portion of testator's estate would be distributable to testator's widow or her representative, she being now deceased. Clearly such was not the intent of the testator, who had expressly created for his widow a life estate only, but in the entire residue of his estate, subject only to minor religious bequests.
It would be hard to conceive of a testator who more clearly attempted to avoid intestacy. After he had created the life estate income for his widow and sister he said in clause 6 of his will, "I give, bequeath and devise all of my real, personal and mixed property, including accumulated and undistributed income." He thereby not only devoted all of his real, personal and mixed estate to the residue, but "accumulated *Page 145 
and undistributed income," evidently referring to the income which might accrue and be unpaid to his widow and sister after payment on the first of the month and before the first of the next month. It is evident, however, that testator, notwithstanding his desire to dispose of his entire estate, did die intestate as to this 25/280ths, unless this percentage interest passed by virtue of paragraph 7 of his will as reworded by him in paragraph 8 of the second codicil. Paragraph 7 of his will reads as follows:
"7. In case of any of the religious or other institutional beneficiaries or individuals above mentioned cease to exist and no disposition of those shares is made in this will, such residuary estate as may be thereby created I give, bequeath and devise in equal shares to those legatees for whom I have made provision in Clause 6 of this will."
Paragraph 8 of the second codicil reads as follows:
"8. I desire paragraph 7 of my said will of November 15th, 1938, to read as follows:
"`In case any of the religious or other institutional beneficiaries, or any of the individuals above-mentioned or named in this Codicil, or any other Codicil hereinafter made and executed by me, shall cease to exist, and such legacy or any part thereof shall be held to have been revoked, resulting in the said bequest or bequests falling into the residuary estate, then it is my will that said residuum, if any shall pass in equal shares to those legatees for whom I have successfully made provision in the various subclauses of paragraph 6 of this Codicil. By the term "equally" I mean "proportionately."'"
A reading of this paragraph discloses, in the first place, that it is quite evident that the scrivener erred in the use of the word "codicil" and that he should have used the word "will." Testator did not devote the second codicil to naming "religious or other institutional beneficiaries" nor to naming "individuals" as beneficiaries. By the first three paragraphs of the second codicil he revoked certain clauses of the first codicil to his will and subdivision (v) of paragraph 6 of his will. Having revoked the three clauses of the first codicil and subdivision (v) of his will he then changed subclause (x) of paragraph 6 so that the beneficiary should be the pastor of the Lady Star of the Sea Church instead of the pastor of St. Nicholas Church. This subclause (x) had been created by the first codicil but testator therein *Page 146 
said, "I change Clause 6 of my said last will and testament by adding the following" and he added subclause (x).
In paragraph 6 of the codicil he changed the beneficiaries entitled to take under clause 5 of subdivision (d) of his will. In these changes he revoked the name of Harry J. Devine and substituted two new names as beneficiaries, but he clearly said that it was the clause of his will he wanted to be read as directed in clause 6 of the second codicil.
In his will he had named religious, institutional and individual beneficiaries and it was clearly upon these legacies that he intended paragraph 8 of the second codicil to operate.
The first change, then, in paragraph 8 of the second codicil is "codicil" to "will," this clearly being testator's intention.
Testator then continued in paragraph 8 of the second codicil, "or any other codicil hereinafter made." It is certain that he intended to say "hereafter" instead of "hereinafter," thus the second change in the wording of paragraph 8.
Testator continued and said that if any of these beneficiaries "shall cease to exist, and such legacy or any part thereof shall be held to have been revoked, resulting in the said bequest or bequests falling into the residuary estate." It is argued that the use of the conjunctive "and" results in two things being necessary to call into operation this clause in order to prevent intestacy, (a) "cease to exist" and (b) "and such legacy or any part thereof shall be held to have been revoked." They argue further and say that by a reading of this clause the operation thereof is limited to "cease to exist," but by substituting the disjunctive "or" the existence of either of these contingencies would bring into operation the clause and prevent intestacy. If a religious or institutional or individual legatee ceased to exist, or if the legacy of either or of an individual should be held to be revoked, their legacy or legacies, in the event no other disposition was made thereof by testator, would fall into the residuary and be disposed of as provided by paragraph 8.
The change from "and" to "or" has been made so often by our courts as to require no citation of authority so to do in this instance. Viewing the language used in the cold setting of paragraph 8 alone would not justify the change, but *Page 147 
when we read the will and first codicil together with the second codicil and observe throughout a clear intent not to die intestate as to any part of testator's estate and the careful precaution adopted to insure this result, the change is amply justified and in this connection it must be kept in mind that the vehicle adopted by testator for the disposal of his estate in its entirety (with the exception of jewelry and personal effects to his wife and $400 for the saying of masses) was through the residuary clause, which was to become operative at the time when all life tenants of income had died, and further, it must be kept in mind that in this clause 8 he concluded by saying that the legacies of those ceasing to exist, or revoked, and thus falling into the residue "shall pass in equal shares to those legatees for whom I have successfully made provision in the various subclauses of paragraph 6." Here again we are met by an evident mistake by the scrivener, who concluded the language just above quoted by saying "of this codicil." That the testator did not mean "codicil" but did mean "will" is apparent. In the first place, there are no subclauses to paragraph 6 of the codicil, which only deals with the testator's striking out the words "my nephew Harry J. Devine" and directing that subdivision (d) of clause 5 of his will be changed to read as directed in paragraph 6 of the codicil. In the next place, paragraph 6 of the codicil does not deal with the ultimate residuary estate. All it deals with is life estates from income.
All of these changes, as above indicated, result in a re-worded clause 8, as follows:
"In case any of the religious or other institutional beneficiaries, or any of the individuals above mentioned or named in this will, or any other will hereafter made and executed by me, shall cease to exist, or such legacy or any part thereof shall be held to have been revoked, resulting in the said bequest or bequests falling into the residuary estate, then it is my will that said residuum, if any, shall pass in equal shares to those legatees for whom I have successfully made provision in the various sub-clauses of paragraph 6 of this will. By the term `equally' I mean `proportionately.'"
But it is said that no case has been found where the courts have restated the language used in the will to the extent above *Page 148 
indicated. This, of course, is of no moment, if, in fact, the changes have been justified by the rules of construction of wills, as laid down by our courts, among which we have the following:
In the very recent case of Herbert v. Central Hanover Bankand Trust Co., supra, Vice-Chancellor Berry said (at p. 337):
"One of the general rules of construction of wills is that the words `are, in all cases, to receive a construction which will give to every expression some effect, rather than one that will render any of the expressions inoperative' * * * `and words which it is obvious are miswritten may be corrected.' * * * `There can be no doubt that it is within the power of the courts in construing a will to depart from its strict wording when that course is necessary to give effect to the intention of the testator.' * * * And the court `for such purpose may mold or change the language of the will such as by rejecting superfluous, absurd or repugnant words or phrases, or restricting them in their application; by supplying omitted words or phrases; by transposing words, expressions or sentences; or by substituting one word or phrase for another.' * * * The power to supply, substitute or transpose words, c., includes, of course, the power to supply omitted punctuation marks."
Also, see, Den ex. dem. McMurtrie v. McMurtrie,15 N.J. Law 276; Den, Nelson v. Combs, 18 N.J. Law 27; Creveling's Exrs.
v. Jones, 21 N.J. Law 573; Shimer v. Shimer, 50 N.J. Eq. 300;24 Atl. Rep. 385; Marshall's Exrs. v. Hadley, supra; Zabriskie
v. Huyler, 62 N.J. Eq. 697; 51 Atl. Rep. 197; affirmed, 64 N.J. Eq. 794; 56 Atl. Rep. 1133; Aitken v. Sharp, 93 N.J. Eq. 336;115 Atl. Rep. 912; Swetland v. Swetland, 100 N.J. Eq. 196;134 Atl. Rep. 822; affirmed in part, 102 N.J. Eq. 294;140 Atl. Rep. 279; Genung v. Best, 100 N.J. Eq. 250; 135 Atl. Rep. 514;Peer v. Jenkins, 102 N.J. Eq. 235; 140 Atl. Rep. 413; Rowe v.Rowe, 113 N.J. Eq. 344; 167 Atl. Rep. 16; Second National, c.,Co. v. Borden, supra; Sadler v. Bergstrom, 113 N.J. Eq. 567;168 Atl. Rep. 50; Gluckman v. Roberson, 115 N.J. Eq. 522;171 Atl. Rep. 674; affirmed, 116 N.J. *Page 149 Eq. 531; 174 Atl. Rep. 488; Fedi v. Ryan, 118 N.J. Law 516;193 Atl. Rep. 801; Maxwell v. Maxwell, 122 N.J. Eq. 247;193 Atl. Rep. 719; First Methodist Church v. Pennock, 130 N.J. Eq. 452; 22 Atl. Rep. 2d 889.
In the McMurtrie Case, supra, Lord Mansfield was quoted as saying that "in order to attain the intent, words of limitation shall operate as words of purchase; implications shall supply verbal omissions; the letter shall give way; every inaccuracy of grammar; every impropriety of terms, shall be corrected by the general meaning, if that be clear and manifest."
In applying the rule as stated above the courts have substituted "or" for "and" and vice versa (Zabriskie, Sadler
and Shimer Cases, supra); the words "lapsed legacies" were held to include all lapsed legacies and devises (Aitken Case,supra); the word "remain" was substituted for the word "return" (the McMurtrie Case, supra); the words "to bequeath to" were held to mean "go to," "the remainder" meant "the survivor" and the expression "if T. or B. die" should be construed to mean "if either of them die under full age and without issue" (the NelsonCase, supra); clauses of the will were transposed and words added and changed (Creveling's Exrs., supra); the words "the several legatees and devisees hereinbefore named" were construed to include all legatees and devisees, whether unconditional or contingent (the case of Marshall's Exrs., supra); the word "following" was substituted for the word "foregoing," the word "herein" for "therein" and the word "without" for the word "with" (Swetland Case, supra); the word "income" was used in place of the word "profits" (Peer v. Jenkins, supra); the word "hereinafter" was construed to mean "hereinbefore" (Rowe v.Rowe, supra); the words "and if I survive him" were held not to express a condition but that the testatrix inserted them immediately after the provision for her brother to make certain that the will would operate even if she should survive him (Second National, c., Co. v. Borden, supra); the phrase "out of the income" was construed to include corpus (Gluckman v.Roberson, supra); an entire paragraph of a testator's will was re-written *Page 150 
with supplied punctuation, corrected spelling and division into sentences in order to give effect to the testator's apparent intention (Maxwell Case, supra); and punctuation, paragraphing and use of the plural instead of the singular number was disregarded in arriving at what a testator intended (FirstMethodist Church v. Pennock, supra).
It is next contended that the final sentence of paragraph 8 means that the legatees mentioned in the subdivisions of paragraph 6 of the will shall each receive an equal portion of the 25/280ths aforesaid instead of the percentages thereof set forth in said subdivision of paragraph 6.
It immediately strikes one that testator, in the subdivisions of clause 6 of his will, was careful to confine his bequests of residue into percentages, giving 28th parts to various Catholic institutions in subdivisions (a) to (d), then 140th parts in subdivisions (e), (f) and (g), 1/28th part in (h) to the pastor of the Lady Star of the Sea Church, then 140th parts in (i) to (p) inclusive, then 6/28ths parts in (q), (r), (s) and (t), then 140th part in (u) and concluding with 280th parts in (v) and (w). Just why testator, having made this percentage division, should have intended any undisposed part of his estate to go to these beneficiaries in different proportions is not apparent, but it is argued that in the will itself testator said in paragraph 7 "equally" and that as that word was used therein it meant that equal shares of this undisposed of fund were to be divided between the beneficiaries without regard to the percentages as fixed in the will. Granting, arguendo, that such would be the case, still, when testator rewrote paragraph 7 in the second codicil he said, "By the term `equally' I mean `proportionately,'" evidently using the word "proportionately" as limiting the meaning of "equally" and he must have meant the proportions mentioned in the various subdivisions of clause 6 of his will. By giving to these beneficiaries the percentages mentioned therein he maintained the equality he had established in the will in the percentage devises. But it is said that by so doing he still would die intestate as to 25/280ths. Not so. The entire fund representing the undisposed of portion of his estate (caused by revocation as aforesaid) would be divided among those for *Page 151 
whom he had successfully made provision in clause 6 of his will. The percentage would be arrived at by first reducing the shares to a common fraction, the total (or numerator of the fraction) of the shares successfully taken under the will becomes the common denominator in the fractional distribution of the whole fund. In other words, under paragraph 6, subdivision (t) the Dunns got 3/28ths or 30/280ths after reducing the fraction to a common denominator. The unrevoked residuary legacies total 255/280ths; the legacies revoked by the second codicil 25/280ths. In this manner the share of each beneficiary in the 25/280ths revoked legacies may be ascertained.
The next question is whether testator intended to and did create joint tenancies or estates in common by various bequests hereinafter set forth.
It seems to me that while consequences of a determination of whether testator intended to create a joint tenancy or tenancies in common are to be considered, it will be best to first determine the fact of the kind of tenancy created, and the chips having fallen as they may, to go back and pick them up to determine whether they indicate a different result than that reached, rather than to look at the results first and thus attempt to determine testator's intention.
There may be no question but that the scrivener, a lawyer of wide experience, knew the difference between a joint tenancy and a tenancy in common and there may be no question that a joint tenancy was created by paragraph 4 of the will. Testator distinctly said, "unto Lewis Clark and Marette Clark, as joint tenants." His evident intent was that Lewis and Marette should each have one-half of the income of the $30,000 as long as they both lived, and that that income should be paid on the first day of each month during their joint lives and that on the death of one the other should have the entire income for life and that on the death of the survivor "the principal and accumulated income, if any" should go to the residuary estate. The accumulated income could only refer to such income as accrued after the first of each month and before it was payable on the first of the next month. As to whether testator in this clause created a true *Page 152 
joint tenancy is questioned by some of the parties. It is said that joint tenancies are confined to interests in property susceptible of being possessed in severally and that each of the legatees, during their joint lives, were entitled to the whole of their respective one-half interest in the income and that on the death of one, leaving the other surviving, that the survivor took the other one-half of income by virtue of the will and not by mere right of survivorship as a joint tenant.
What testator said was "income for their joint lives as joint tenants" and that on the death of both of them the trust fund should go to residue. Certainly testator intended that the right of survivorship should be an incident of the gift of the income, and each of the beneficiaries for life was entitled to one-half of the income and each held in severalty a right to the other half of income and accumulations on the death of the other. Surely testator meant what he said, "joint tenants." As pointed out in 14 American Jurisprudence 81, 82, § 10:
"it is now generally recognized that there can be a joint tenancy in almost any kind of personal property, whether it is corporeal * * * or incorporeal."
Passing paragraph 4, we come to clause 5, subdivision (d) of the will, where testator was again disposing of income, as he was in clause 4, and he directed that after the death of his wife, income formerly payable to her should be paid to seven named beneficiaries, "as joint tenants." Here again there may be no question, as I see it, that testator intended exactly what he said and that his language is so clear as to preclude doubt.
In clause 6 testator was disposing of the corpus of his estate and that disposition was to be made as he said, "upon the arrival of the time fixed for the non-payment of income under clause 5 (d)" of the will.
In clause 6, subdivisions (r), (s) and (t) it will be observed that testator expressly said that the bequests therein made were to the beneficiaries "as joint tenants" but he added "or their heirs and assigns" in each instance. *Page 153 
I, of course, do not know why the scrivener deemed it necessary to add these words "or their heirs and assigns." He had not done so in disposing of income, as heretofore noted, and I assume believed that inasmuch as the shares in the real as well as the personal estate were being disposed of, the use of this added phrase was necessary. He may have had in mind Zabriskie v.Huyler, supra, wherein (at p. 700), the court said:
"The gift here is not only a legacy, but a devise of land, so that the habendum to the heirs of the devisee was added in conformity with a common usage."
It must be remembered in this connection that all the bequests in paragraph 6 of the will were to be paid "in cash or kind" and it may well be that in using the words "heirs and assigns" testator had in mind that some of the legatees might take real estate to satisfy their legacy.
I think the addition of the words "or their heirs and assigns" did not in any wise indicate an intent to create any estate other than that which testator called it, a "joint tenancy," and if this is so, the added phrase may be discarded as mere surplusage.
In Pennsylvania Co., c., v. Riley, 89 N.J. Eq. 252;104 Atl. Rep. 225, the Vice-Chancellor having a somewhat similar situation before him and failing to find a definite intent on the part of the testator that the estate created by testator should be limited by the use of subsequent words "or the survivors or heirs of them," treated this phrase as surplusage.
My conclusion is that in subdivisions (r), (s) and (t) of clause 6 joint tenancies were created. In Walter v. Ham,75 N YS. 185, the Appellate Division of the New York Supreme Court was asked to construe the following language in a will: "as joint tenants and tenants in common, * * * to them and to their heirs, absolutely and forever." The court ordered the insertion of the words "not as" before the phrase "tenants in common" and disregarded the words pertaining to the heirs.
If the foregoing interpretation is correct we have an answer to the question raised under paragraph 6 (t) of the will, which reads: "3/28ths part thereof in cash or in kind unto *Page 154 
Margaret C. Dunn, William Dunn and Harry Dunn, as joint tenants, or their heirs and assigns." William Dunn predeceased testator. Dunn also died testate and his executor contends that the gift under 6 (t) was not a joint tenancy. The answer is that it was and that on the death of William, Margaret and Harry succeeded as survivors.
It is argued that testator knew of William's death when he directed that paragraph 7 of his will should read as set forth in paragraph 8 of the second codicil, which provided that if "any of the individuals above mentioned * * * shall cease to exist" then the bequest to that individual should go to the residuary. From this language it is argued that the interest of William Dunn must go into the residuary and that testator did not intend in his will to create a joint tenancy. Not so. On the death of William Dunn, testator having created a joint tenancy, knew that the remaining joint tenants succeeded to the interest of a deceased joint tenant by right of survivorship. See Coudert v. Earl,45 N.J. Eq. 654; 18 Atl. Rep. 220.
In 69 Corp. Jur. 1056 § 2265, it is said:
"Where, under the will, the donees are to take as joint tenants, or as a class, there is no lapse because of the death of one or more, but the entire gift goes to the survivor or survivors." Citing McLaughlin v. McLaughlin, 89 Atl. Rep. 520;U.S. Trust Co. v. Jamison, 105 N.J. Eq. 418; Forshee v.Dowdney, 101 N.J. Eq. 446; affirmed, 103 N.J. Eq. 374; SecurityTrust Co. v. Lovett, 78 N.J. Eq. 445, and Gordon v.Jackson, 58 N.J. Eq. 166.
My conclusion is that a joint tenancy was created and that the interest of William Dunn did not lapse upon his death and thus his interest on his death did not go to "his heirs and assigns" but to the surviving joint tenants.
Testator, in paragraph 6 (r) of his will, bequeathed to "my nephew, Harry J. Devine, and Alice Devine, his wife." as joint tenants, 2/28th parts of his residuary estate. In subdivision (d) of clause 5 of his original will he bequeathed to Harry J. Devine, along with six other beneficiaries, a life estate in income, to take effect after the death of his wife. *Page 155 
"(d) On the first day of each and every month to pay the balance of said income to my wife, Lucinda E. Devine, for and during the term of her natural life, and after her death to pay the said balance unto my said sister, Mary T. Devine, my said niece, Margaret Devine, also known as Sister M. Magdalene, my nephew, Harry J. Devine, my nephew and niece, Lewis and Marette Clark, unto Effie Clark, and unto Margaret C. Dunn, as joint tenants, for and during the life of Mary T. Devine, if she shall survive my said wife, and no longer."
By paragraph 6 of the second codicil testator said:
"In Clause 5 of sub-paragraph (d) of my said will of November 15, 1938, I strike out the words `my nephew Harry J. Devine,' and thereby intending to revoke any bequests to my said nephew; and to leave no doubt about my intent, I desire said Clause 5 of said subparagraph (d) to read as follows:
"On the first day of each and every month to pay the balance of said income to my wife, Lucinda E. Devine, for and during the term of her natural life, and after her decease to pay said balance to my said sister, Mary T. Devine, my said niece, Margaret Devine, also known as Sister M. Magdeline, unto my nieces and nephews, Lewis and Marette Clark; unto Effie Clark, Christabel Harper and Rebecca Clark Ward as joint tenants, or their heirs and assigns, for and during the life of Mary T. Devine, if she survives my said wife and no longer."
It is evident that testator meant to say subdivision (d) of clause 5 of his will, and not "clause 5 of subparagraph (d)." There is no subparagraph in subdivision (d) of clause 5 and the rewriting of the paragraph demonstrates clearly that the testator mistakenly said "clause 5 of subparagraph (d)."
The question presented is — Did testator, by this provision of his codicil, intend to revoke not only Harry's bequest under clause 5, subdivision (d) but also his interest in the 2/28ths portion of the residuary estate given to Harry as joint tenant with his wife in the original will by paragraph 6 (r).
As I view it, there is no doubt that testator did not intend to strike out the words "my nephew, Harry J. Devine" from paragraph 6 (r) of his original will. He, of course, knew that Harry had been named therein as a joint tenant with his wife and had he intended to eliminate Harry as a beneficiary thereunder he could and would have expressly said so, as he did in eliminating Harry from paragraph 5, subdivision (d). True, testator said his intention was to "revoke any bequests to my said nephew," but he continued by saying, *Page 156 
"to leave no doubt about my intent, I desire said clause 5 of said subparagraph (d) to read as follows:" He then recites 5 (d), eliminating the words "my nephew, Harry J. Devine" and "Margaret C. Dunn" and substitutes others in their place and stead. This revocation of the bequest to Harry in 5 (d) of the will, while it eliminates Harry from participating in the benefits of that provision of the will, in nowise, by implication or otherwise, revoked the bequest in 6 (r).
The last question propounded arises under paragraph 6, subdivision (u), which reads as follows:
"(u) 3/140ths part thereof in cash or in kind unto Susan Stewart, of Kansas City, Mo., if she shall be alive at the period of distribution, but if she should not be alive at the period of distribution, then unto Olive Scott, of the said City, to have and to hold unto her or her heirs and assigns, forever."
A part of the residuary estate of the testator as disposed of by him in paragraph 6 of his will, as that was amended, revoked or added to by the codicils, consists of the remainder in the $30,000 trust fund of which Lewis and Marette Clark are to receive the income for life, and it is quite evident that the interest of Susan Stewart under paragraph 6, subdivision (u) aforesaid does not vest in her until the death of the survivor in the $30,000 trust fund, and it is further evident that Susan Stewart must survive Lewis and Marette Clark in order to be entitled to the 3/140ths interest in the trust fund, otherwise, as testator clearly said, "at the period of distribution" Olive Scott or her heirs and assigns are to receive the 3/140th part thereof.
As to the remaining residuary estate of which Susan Stewart is bequeathed 3/140th part as aforesaid, it is also quite evident under the language of the will that Susan Stewart must be alive at the period of distribution, i.e., after the death of the life tenants, because testator expressly provided in the sixth paragraph of his will that the residuary estate should be distributed to his beneficiaries under the various subdivisions of that clause "upon the arrival of the time fixed for the non-payment of income under clause 5 (d) of this will," and it follows, of course, that if Susan Stewart *Page 157 
is not alive at the time so fixed, Olive Scott succeeds to the legacy.
A question was raised as to the identity of Christol Clark Harper but it is conceded at this time that Christol Clark Harper and Christabel Harper are one and the same person and it is evident that testator intended "Christol Clark Harper" as beneficiary in both clause 6 of the second codicil and clause 6 (s) of the will.
Since the filing of the bill a supplemental bill became necessary owing to the death of Effie Clark, who was named as beneficiary under clause 5, subdivision (d) of the will, as well as in paragraph 6 (s) thereof.
Clause 5, subdivision (d) has been heretofore quoted. Clause 5 (d) was modified by clause 6 of the second codicil by striking out the name of Harry J. Devine and adding the names of Christabel Harper and Rebecca Clark Ward.
I have already held that testator, by his will, intended to and did create a joint tenancy in the income under paragraph 5 (d) for the lifetime of Mary T. Devine. This ruling also applies to this clause as re-written in the codicil. Under this ruling the death of Effie Clark during the lifetime of Mary T. Devine served to increase the shares of the other joint tenants in the income. They take Effie Clark's share by right of survivorship.
Mrs. Clark died May 19th, 1943, having received one payment of income during her lifetime under paragraph 5 (d). Income accruing before her death goes to her estate; that which has or may accrue thereafter goes to the other joint tenants.
Subdivision (s) of paragraph 6 of the will reads as follows:
"(s) 6/28ths part thereof in cash or in kind unto Effie Clark, Christol Clark Harper and Rebecca Clark Ward, as joint tenants, or their heirs and assigns."
Under this clause, the question is whether the gift to Effie vested on the death of testator or whether she merely had a contingent remainder.
Under the terms of the will testator said, in paragraph 6, "upon the arrival of the time fixed for non-payment of income *Page 158 
under clause 5 (d) of this will, I give, bequeath and devise." The time fixed for the non-payment of income under clause 5 (d) was the death of testator's sister, after the death of his wife, so that the gifts under clause 6 of the will were postponed in enjoyment during the lifetime of the sister, but the event of the ultimate death of the sister was certain and the future enjoyment of the beneficiaries under clause 6 was merely postponed until the happening of that certain event. I hold, therefore, that the gift to Effie under 6 (s) vested on the death of testator.
A vested remainder is one in which there is a present fixed right to future enjoyment of the property. Fairly v. Kline,3 N.J. Law 322; Ex'r of Wintermute v. Ex'r of Snyder, 3 N.J. Eq. 489; Price v. Sisson, 13 N.J. Eq. 168; affirmed, 17 N.J. Eq. 475; Security Trust Co. v. Lovett, 78 N.J. Eq. 445;79 Atl. Rep. 616; Kahn v. Rockhill, 132 N.J. Eq. 188; 28 Atl. Rep.
2d 34, and many other cases.
Clapp on Wills and Administration in New Jersey (at § 179), says:
"If the person who is to take an interest is (a) in being and (b) ascertained and (c) if there is no uncertain event forming a condition precedent to the taking of the estate, then his interest is vested whether it be of realty or personalty."
When the right of future enjoyment is limited on an event that is certain to happen, such as the death of a life tenant, it vests upon the death of the testator. Security Trust Co. v.Lovett, supra; Price v. Sisson, supra; Clapp on Wills andAdministration in New Jersey § 179, and Thomas' Ex. v.Anderson's Adm., 21 N.J. Eq. 22.
In Howell, Ex. v. Green, Adm., 31 N.J. Law 570, where an interest in a fund was given to a life tenant "and after her decease," the fund was given to two remaindermen, it was held that the gift vested in the remaindermen. The court said (at p.572):
"On the other hand, it is an equally well settled rule of construction, that where an absolute property in a fund is bequeathed in fractional interests in succession, at periods which must arrive, the interests of the first and subsequent takers will vest together. 1 Roper on Leg. 584." *Page 159 
On page 573 the court said:
"Where it is apparent from the terms of the will that the future gift is postponed to let in some other interest, the gift is vested. Packham v. Gregory, 4 Hare 398; 1 Roper on Leg.557."
See, also, In re Buzby, 94 N.J. Eq. 151; 118 Atl. Rep. 835.
But it is argued that the will clearly indicates that the remainders under paragraph 6 were intended not to vest at testator's death but only after the death of his sister. The executors say that paragraph 8 of the second codicil expresses the intention of the testator that gifts under clause 6 should not vest on his death.
It is quite evident, as said before, that clause 8 was inserted to prevent intestacy and not for the purpose of affecting legacies created under clause 6, or changing their character as being vested or not. Testator provided that in the event of the contingencies mentioned in clause 8 happening, so that any legacy should be held to be revoked, resulting in the bequest falling into the residuary, it should pass as directed in the eighth clause. He certainly did not intend that on the death of one joint tenant her interest should pass under clause 8. He did intend that if a legatee died so that her legacy under the will lapsed, that legacy should pass as per clause 8. He said, "shall cease to exist or be held to be revoked," resulting in the bequest falling into the residuary. The death of a joint tenant leaving co-tenants has no such result.
A decree may be presented in conformity herewith, at which time counsel fees will be fixed. *Page 160